[L. A. No. 28584. In Bank. Sept. 12, 1967.]

THOMAS C. LYNCH, as Attorney General, etc., Plaintiff and Appellant, v. LYLE A. SPILMAN et al., Defendants and Appellants.

Thomas C. Lynch, Attorney General, and Carl Boronkay, Deputy Attorney General, for Plaintiff and Appellant.

Hanrahan & Kippen, John P. Hanrahan, Harold Kippen and Robert W. Stanley for Defendants and Appellants.

SULLIVAN, J.—This action was commenced by the Attorney General (plaintiff) to impress a charitable trust upon real property distributed by Medicine Lodge, a nonprofit corporation, to its individual members, defendants herein, upon its dissolution and to obtain other incidental relief. Initially, summary judgment was entered in favor of plaintiff; defendants upon a motion made under Code of Civil Procedure

section 473 subsequently obtained an order vacating said judgment. Plaintiff appeals from the last mentioned order. We find no abuse of discretion in the vacating action of the trial court. Specifically, we hold that the court could properly conclude that the judgment in question was taken against defendants through their inadvertence and excusable neglect and that said defendants had a meritorious defense to the action. We therefore affirm the order vacating the judgment.

Plaintiff's first amended complaint (complaint) in three counts, alleges in substance that Medicine Lodge was incorporated in 1943 as a nonprofit corporation under California law; that its purposes are set forth in its articles of incorporation; that it acquired the real property involved in 1944; that upon its acquisition the real property "became impressed with the charitable purposes" as set forth in the articles of incorporation; that in 1960 Medicine Lodge sold five acres of the property for $10,000; and that in 1961 upon its dissolution, the corporation without consideration and "in violation of the charitable trust" impressed thereon, conveyed the property to its members, defendants herein, who have held the same "as their own and not . . . in trust for charitable purposes." Defendants' answers generally denied that the property had been impressed with a charitable trust or had been conveyed in violation of such a trust.[1]

On September 17, 1964, plaintiff made a motion for summary judgment. After declarations in support thereof and a declaration of defendant Lyle A. Spilman in opposition thereto were filed, the motion was denied. On November 25, 1964, plaintiff made a second motion for summary judgment, supporting the same by his declarations on file as well as by additional declarations then offered. Defendants filed no declaration in opposition. When the motion came on for hearing, defendants made no appearance and the motion was granted. Judgment was entered accordingly on December 15, 1964, generally granting plaintiff the relief prayed for.

On Feburary 8, 1965, defendants, through new counsel, filed a motion to vacate the judgment and the order directing summary judgment upon the ground that the failure of their counsel to appear and to take an active part in the hearing of

[1]Defendants also alleged by way of affirmative defense that the Attorney General was estopped to claim that the property had been or was impressed with any charitable object or purpose. After plaintiff's demurrer thereto was sustained, defendants failed to amend their answers in this regard.

256

the motion for summary judgment was due to the inadvertence and excusable neglect on the part of said attorneys. (Code Civ. Proc., § 473.) Declarations of four attorneys and a "supplemental" declaration of Mr. Spilman were filed in support of the motion and declarations in opposition were filed by plaintiff. The motion was granted. Plaintiff has appealed from the order granting the motion and setting aside the summary judgment; defendants have cross-appealed from the judgment itself. Initially, we inquire as to the correctness of the vacating order, since a determination upholding it will render moot the cross-appeal.

In determining whether or not the order appealed from can be upheld, we are required to consider two subsidiary questions: (1) Whether the summary judgment was taken against defendants because of the inadvertence or excusable neglect of their attorneys; and (2) whether defendants have a meritorious defense to plaintiff's motion. We have pointed out: "Before the trial court can be called upon to exercise its discretion in relieving from a default judgment, however, the party in default must show not only a good excuse for his default, but also, that he has a meritorious defense to the action." (*Beard* v. *Beard* (1940) 16 Cal.2d 645, 648 [107 P.2d 385].) We therefore first direct our attention to defendants' excuse for their default.

Plaintiff contends that the failure of defendants' counsel to appear at the hearing on the motion for summary judgment constituted neither inadvertence nor excusable neglect. However the four supporting declarations of defendants' attorneys[2] state: that Mr. Schulte who had successfully opposed the first motion for summary judgment was actively engaged in trial in another county on the day noticed for hearing the second motion; that he communicated with Deputy Attorney General Boronkay, counsel for plaintiff, and attempted to continue the hearing, explaining to the latter that he would be on trial; that Mr. Boronkay told Mr. Schulte that he would not stipulate to a continuance but that if someone would appear for Mr. Schulte the continuance would be granted; that upon request made of Mr. Rau, the latter said he would appear unless he could arrange with Mr. Stanley to do so; that Mr. Rau later advised Mr. Schulte that Mr. Stanley

---

[2]Mr. Schulte who was attorney for all defendants except Gonzales; Mr. Rau, who was attorney for Gonzales; Mr. Stanley, who had been requested by Mr. Rau to appear for all defendants; and Mr. Kippen, who was one of defendants' new counsel.

would appear for the purpose of obtaining a continuance; that Mr. Schulte believed that an attorney would be present and that a continuance would be granted; that Mr. Stanley told Mr. Rau that he would appear although he might be late since he had another matter set for 9 a.m. on the day in question; that he was not free until 9 :20 a.m. at which time he telephoned the clerk that he would be late but was informed by the latter that the case had already been called and the motion granted because no one had appeared for defendants; that the clerk also told Mr. Schulte that the deputy attorney general did not mention anything to the judge about defendants seeking a continuance or intending to have someone appear on their behalf for that purpose.

The declaration of plaintiff's counsel, Mr. Boronkay, in opposition to the motion states: that when Mr. Schulte requested a continuance of the hearing, he refused to stipulate to it and told Mr. Schulte that the latter would have to appear in court and move for a continuance or perhaps rely on Mr. Rau to do so; that he never stated he would not oppose a motion for a continuance and in fact appeared in court prepared to oppose a continuance. Plaintiff also filed the declaration of the clerk of said department of the superior court which states: that when the case was called, no one answered on behalf of defendants and the motion for summary judgment was thereupon granted; that when an attorney telephoned a half-hour later, he advised the latter as to what happened but did not say that the court granted the motion because no one appeared for defendants.

It is well settled that a motion for relief from default under Code of Civil Procedure section 473 is addressed to the sound discretion of the trial court and that its ruling thereon will not be disturbed on appeal in the absence of a clear showing of abuse of discretion. (*Weitz* v. *Yankosky* (1966) 63 Cal.2d 849, 854 [48 Cal.Rptr. 620, 409 P.2d 700]; *Freeman* v. *Goldberg* (1961) 55 Cal.2d 622, 625 [12 Cal.Rptr. 668, 361 P.2d 244]; *Beard* v. *Beard, supra,* 16 Cal.2d 645, 647; *McNeil* v. *Blumenthal* (1938) 11 Cal.2d 566, 567 [81 P.2d 566].)

We have heretofore observed "that appellate courts have always been and are favorably disposed toward such action upon the part of the trial courts as will permit, rather than prevent, the adjudication of legal controversies upon their merits." (*Benjamin* v. *Dalmo Mfg. Co.* (1948) 31

Cal.2d 523, 525 [190 P.2d 593]; *Weitz* v. *Yankosky, supra,* at pp. 854-855.)

We cannot say that in the light of all the circumstances the trial court abused its discretion in concluding that the order granting plaintiff's motion for summary judgment and the summary judgment entered thereon were taken against defendants as a result of the inadvertence and excusable neglect of their attorneys. The trial judge could very well believe that defendants, who had already successfully defeated one motion for summary judgment, were desirous of contesting the second and that, unavoidably occupied with other legal matters, they had made arrangements for the appearance of another attorney to obtain a continuance, believing in good faith that it would be granted. The judge was warranted in concluding that there was inadvertence and excusable neglect on the part of such substitute counsel, Mr. Stanley, who, himself engaged in another department, had contacted the clerk of the court after a lapse of only 20 minutes during which time the deputy attorney general permitted the motion for summary judgment to be ruled on without advising the court in any way of his previous discussion with defendants' counsel. It could also be inferred from defendants' declarations that plaintiff's counsel had indicated that, while not stipulating to a continuance, he would not object to one and that if someone appeared "the continuance would be granted." Thus the court properly took into account with fairness and understanding the constant conflicts which plague the busy lawyer and seems to have looked "with disfavor upon a party who, regardless of the merits of his case, attempts to take advantage of the . . . inadvertence. or neglect of his adversary." (*Berri* v. *Rogero* (1914) 168 Cal. 736, 740 [145 P. 95].)

We are not persuaded by plaintiff's argument that the motion for summary judgment was granted *not* because defendants failed to appear at the calling of the case but because they had not filed any declarations or points and authorities in opposition to the motion. On the record before us, the court in granting relief under section 473 could have properly concluded that defendants intended to rely upon their declarations in opposition to the *first* motion for summary judgment since plaintiff's *second* motion for summary judgment had been made on "the pleadings, records and files herein" and additionally that defendants, having sought a continuance, could thereafter file any documents in opposition

at or before the date of the continued hearing. We are satisfied that defendants made a sufficient showing of excuse for their default. It is true that in some respects their declarations are disputed by those of plaintiff's. This does not alter what we have said. Since the issues raised by defendants' motion were tried on affidavits we are " 'bound by the same rule as where oral testimony is presented for review.' [Citations.] When an issue is tried on affidavits, the rule on appeal is that those affidavits favoring the contention of the prevailing party establish not only the facts stated therein but also all facts which reasonably may be inferred therefrom, and where there is a substantial conflict in the facts stated, a determination of the controverted facts by the trial court will not be disturbed." (*Griffith Co.* v. *San Diego College for Women* (1955) 45 Cal.2d 501, 508 [289 P.2d 476, 47 A.L.R.2d 1349]; *Beckett* v. *Kaynar Mfg. Co., Inc.* (1958) 49 Cal.2d 695, 699 [321 P.2d 749].) We have applied this rule to orders made on motions for relief from default under section 473. (*Gomes* v. *Bragg* (1927) 201 Cal. 70, 73 [255 P. 499]; *Boland* v. *All Persons* (1911) 160 Cal. 486, 489 [117 P. 547]; *Cole* v. *Roebling Constr. Co.* (1909) 156 Cal. 443, 445-446 [105 P. 255].)

We now turn to consider the second subsidiary question at hand, namely, whether defendants have a meritorious defense to the motion for summary judgment. Our answer must be based on the various declarations and certifications both in support of and in opposition to the motion which were before the trial court and which of course will be available for its consideration again, should the vacating order appealed from be upheld. As we have said, plaintiff asserted that his motion would be based on "the pleadings, records and files herein," on declarations and certifications[3] filed in support of the first motion, and on declarations filed at the time of the second motion. Similarly, defendants based their motion for relief under section 473, among other things, on a supplemental declaration of Mr. Spilman and on "the pleadings, records and files herein" which fairly construed include Mr. Spilman's first declaration filed in opposition to plaintiff's earlier motion for summary judgment. We must consider all of this evidence under the familiar rules governing summary judgment. (*Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62

---

[3]These were certified copies of the articles of incorporation of Medicine Lodge and of certain deeds by which it acquired the real property in question.

Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785]; *Joslin* v. *Marin Municipal Water Dist.* (1967) *ante,* pp. 132, 146-147 [60 Cal.Rptr. 377, 429 P.2d 889].)[4]

Essentially, the problem confronting us is whether the real property involved was held by Medicine Lodge upon a charitable trust. ■ To answer this question, we must determine whether that corporation was one organized for, or engaged in carrying out, recognized charitable purposes or objectives, since property transferred to a corporation or other institution organized for a charitable purpose without a declaration of the use to which the property is to be put, is received and held by it "in trust to carry out the objects for which the organization was created." (*Estate of Clippinger* (1946) 75 Cal.App.2d 426, 433 [171 P.2d 567], quoted with approval in *In re Los Angeles County Pioneer Soc.* (1953) 40 Cal.2d 852, 860 [257 P.2d 1]; *Pacific Home* v. *County of Los Angeles* (1953) 41 Cal.2d 844, 852 [264 P.2d 539]; *Estate of Henderson* (1941) 17 Cal.2d 853, 857-858 [112 P.2d 605]; *Estate of McDole* (1932) 215 Cal. 328, 334 [10 P.2d 75]; *Estate of Winchester* (1901) 133 Cal. 271, 277 [65 P. 475, 54 L.R.A. 281]; see Rest.2d Trusts, § 348 and com. f, 3d par., p. 212.) More precisely, our task is to determine whether, on the record heretofore indicated, the character of Medicine Lodge as a charitable corporation is a triable issue.

In *Estate of Dol* (1921) 186 Cal. 64, 65-66 [198 P. 1039], this court said: "A charitable corporation is one organized for the purpose, among other things, of promoting the welfare of mankind at large, or of a community, or of some class forming a part of it indefinite as to numbers and individuals. It is impossible to enumerate specifically all purposes which characterize such corporations as charitable." ■ Simply

---

[4]We said in *Stationers*: "The matter to be determined by the trial court in considering such a motion is whether the defendant (or the plaintiff) has presented any facts which give rise to a triable issue. The court may not pass upon the issue itself. Summary judgment is proper only if the affidavits in support of the moving party would be sufficient to sustain a judgment in his favor and his opponent does not by affidavit show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue. The aim of the procedure is to discover, through the media of affidavits, whether the parties possess evidence requiring the weighing procedures of a trial. In examining the sufficiency of affidavits filed in connection with the motion, the affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. Such summary procedure is drastic and should be used with caution so that it does not become a substitute for the open trial method of determining facts." (*Stationers Corp.* v. *Dun & Bradstreet, Inc., supra,* 62 Cal.2d 412, 417.)

stated, a charitable corporation is one created for or devoted to charitable purposes. (15 Am.Jur.2d 154.) "Charitable purposes include (a) the relief of poverty; (b) the advancement of education; (c) the advancement of religion; (d) the promotion of health; (e) governmental or municipal purposes; (f) other purposes the accomplishment of which is beneficial to the community." (Rest.2d Trusts, § 368.) ▄ "The common element of all charitable purposes is that they are designed to accomplish objects which are beneficial to the community." (*Idem.*, com. a, 2d par., p. 247; see also *People* ex rel. *Ellert* v. *Cogswell* (1896) 113 Cal. 129, 138 [45 P. 270, 35 L.R.A. 269].) ▄ As we said in another context in *Estate of Henderson, supra,* 17 Cal.2d 853, 857: "A bequest is charitable if: (1) It is made for a charitable purpose; its aims and accomplishments are of religious, educational, political or general social interest to mankind. [Citations.] (2) The ultimate recipients constitute either the community as a whole or an unascertainable and indefinite portion thereof. [Citations.] *The charitable nature of an institution is determined on the same basis.*" (Italics added.) ▄ "In the case of a private trust there must be certainty as to the beneficiaries, but in charitable trusts individuals are not named, for the reason that, if named, the gift becomes a donation to individuals, and, losing the character of indefiniteness as to persons,—which is the essence of a charitable trust,—it is no longer a charitable trust." (*Fay* v. *Howe* (1902) 136 Cal. 599, 601 [69 P. 423].)

▄ With the foregoing in mind we turn to examine the articles of incorporation of Medicine Lodge. For convenience we set forth the pertinent parts thereof in the footnote.[5] In

---

[5]The articles in pertinent part provide: "SECOND: The purposes for which said corporation is formed are:

"1. To promote, foster, encourage and sponsor activities for the character building of boys and to advance the educational, vocational, recreational, civic, social, commercial and economical interest in and about El Monte, California, and surrounding areas in the County of Los Angeles, State of California.

"2. To promote sociability and friendship amongst its members and others. To manage and conduct entertainments, excursions, social meetings and such activities as hiking, swimming, crafts, camp-outs and nature lore.

"3. To promote the theory and practice of the principles of good government and good citizenship.

"4. To unite the members in the bonds of friendship, good fellowship and mutual understanding.

"5. To provide a forum for the full and free discussion of all matters of public interest, partisan politics and sectarian religion alone excepted.

the construction of these purpose clauses[6] and of the other evidence in the indicated record, the positions of the parties are antipodal: The Attorney General asserts that the articles, when read as a whole, impel the conclusion that Medicine Lodge was organized for charitable purposes since its paramount purpose was charitable and that this conclusion is amply supported by the extrinsic evidence presented. Defendants contend on the other hand that the articles disclose that the corporation was organized for social, fraternal and other purposes as well as for charitable purposes, that the articles being clear, unambiguous and susceptible of only the foregoing

"6. To encourage efficiency and promote high ethical standards in business and professions.

"7. To hold, lease, buy, own, develop and sell property, real and personal, to borrow money and issue bonds or other evidences of indebtedness, and to execute mortgages or deeds of trust to secure same.

"8. To render such benevolent aid and comfort to its members as may be provided by its by-laws.

"9. To encourage and assist in public improvements of all kinds therein, including streets, highways, sewers, public buildings, and any and all things which are for public good; to locate schools in the location, and development therein of factories, manufactures and other industries.

"10. To promote integrity and good faith, just and equitable principles in business and professional activity, and uniformity in commercial usages, and to acquire, preserve and distribute educational, civic, social, commercial and economic statistics and information of value; to discover and correct abuses; to prevent or adjust controversies; to have a part as representing this district in the consideration and decision of public policy and municipal, county, state and national affairs.

"11. To organize and conduct any other bureau or bureaus, or exchanges, which the board of directors may decide shall be beneficial or necessary in the building up of said district and for the best interests thereof and of this organization.

"12. To do and exercise all powers necessary, suitable or proper for the accomplishment or attainment of any or all of the objects hereinbefore enumerated, or which at any time appear conducive to, or expedient for the carrying out of the objects and purposes of fostering and promoting the commercial, industrial, social, physical, and moral development of the community hereinbefore mentioned, and for the protection or benefit of this corporation."

[6]As defendants point out to us, at the time Medicine Lodge was incorporated as a nonprofit corporation in 1943, the then applicable statute, Civil Code section 595 (added to the code by Stats. 1931, ch. 871, p. 1848) required in subdivision 2 thereof that the articles state merely "The purposes for which it is formed and that it is a corporation which does not contemplate pecuniary gain or profit to the members thereof." This requirement differed from that of present Corporations Code section 9300 in effect since the enactment of said code in 1947, which requires in subdivision (b) thereof that the articles state "The specific and primary purposes for which it is formed. This requirement shall not be deemed to preclude a statement of general purposes or powers or to restrict the right of the corporation to engage in any other lawful activity."

reasonable construction, the extrinsic evidence presented by plaintiff cannot be considered in interpreting them, but that, assuming *arguendo* such evidence can be considered, it does not support plaintiff's interpretation of the articles.

If we could conclude that the purpose or purposes for which Medicine Lodge was organized were exclusively charitable, then the articles would foreclose any further inquiry as to whether its assets were impressed with a charitable trust. We have said that "all the assets of a corporation organized *solely* for charitable purposes must be deemed to be impressed with a charitable trust by virtue of the express declaration of the corporation's purposes, and notwithstanding the absence of any express declaration by those who contribute such assets as to the purpose for which the contributions are made." (Italics added.) (*Pacific Home* v. *County of Los Angeles, supra,* 41 Cal.2d 844, 852.) The rule is the same where the corporate purposes other than charitable are only collateral or incidental to the charitable purposes. Thus, we have held that a declared purpose of a society "to cultivate social intercourse and friendship among its members" was only "incidental to its public and charitable purposes. Since members of a charitable organization often participate in its activities with the object of making new friends and participating in pleasurable group activities in the course of carrying out the charitable purposes of the organization, the incidental social activities . . . do not deprive it of its charitable character." (*In re Los Angeles County Pioneer Soc., supra,* 40 Cal.2d 852, 860.)[7]

In the case at bench it fairly appears from an examination of the articles alone that Medicine Lodge was not organized for exclusively charitable purposes. Although numerous purposes beneficial to the community are set out in paragraphs 1, 3, 5, 6, 9, 10 and parts of 11 and 12, and the contemplated recipients of such benefits are either the com-

---

[7]The articles of Pioneer, as reported in the *Pioneer Society* case, are as follows: " 'That the purpose for which this corporation is formed is to cultivate social intercourse and friendship among its members, to collect and preserve data touching the early history of Los Angeles County and the State of California, to collect and preserve articles, specimens and material things illustrative or demonstrative of the customs, modes and habits of the aforesaid times in said State; to perpetuate the memory of those who, by their labors and heroism, contributed to make the history of said County and State; and in furtherance of said purpose [to do all acts] necessary and convenient for the promotion of the aforesaid purpose; and to exist as a social corporation under the provisions of the laws of the State of California, covering such corporations, and not for pecuniary profit.' " (40 Cal.2d at pp. 858-859.)

munity as a whole or "boys," which latter designation clearly connotes "an unascertainable or indefinite portion" of the community (*Estate of Henderson, supra,* 17 Cal.2d 853, 857), the articles also provide in paragraphs 2, 4 and 8 for purposes relating solely to its members and the contemplated recipients of these benefits *cannot* be deemed to be "an indefinite and unascertainable portion" of the community. Among the corporate purposes are those to "promote sociability and friendship amongst its members," to "conduct entertainments, excursions, social meetings," to "unite the members in the bonds of friendship, good fellowship and mutual understanding," to render "comfort to its members as may be provided by its by-laws." The foregoing noncharitable purposes, unlike those in the *Pioneer Society* case, are fully set out as independent objectives of corporate existence, unrelated to the charitable purposes provided in the articles. They are given an importance equal to that of the charitable purposes in the overall corporate design. Accordingly, we cannot assign to them roles merely ancillary to charitable functions and we therefore feel justified in concluding that the corporation was multi-purposed.

 The foregoing does not end our inquiry. Although an examination of the articles alone fails to reveal an exclusively charitable corporate character or even a predominantly charitable character unaffected by incidental noncharitable objectives, nevertheless we recognize that in some instances the "character of the institution is to be determined not alone by the powers of the corporation as defined in its charter, but also by the manner of conducting" its activities. (*Stewart* v. *California Medical etc. Assn.* (1918) 178 Cal. 418, 421 [176 P. 46]; see also *Hallinan* v. *Prindle* (1934) 220 Cal. 46, 49 [29 P.2d 202]; *Armstrong* v. *Wallace* (1935) 8 Cal.App.2d 429, 432 [47 P.2d 740]; *Stonaker* v. *Big Sisters Hospital* (1931) 116 Cal.App. 375, 378 [2 P.2d 520]; *Levy* v. *Superior Court* (1925) 74 Cal.App. 171, 176 [239 P. 1100]; see also *Stockton Civic Theatre* v. *Board of Supervisors* (1967) 66 Cal.2d 13, 20 [56 Cal.Rptr. 658, 423 P.2d 810], where we concluded that the charitable nature of the plaintiff was established by its "corporate purposes as well as its activities. . . .") We therefore purpose to examine the extrinsic evidence in the record.

Plaintiff's affidavits in support of his motions for summary judgment and in opposition to defendants' motion under section 473 set forth the following nine items of extrinsic evidence which plaintiff now claims establish the charitable character of the corporation:

(1) The corporation applied for and was granted permission to file its articles and maintain its continued existence without payment of the franchise tax in recognition of its nonprofit status. Its application, made in 1943, stated: "That Medicine Lodge is an association of individuals as a Corporation for the purposes, solely of promoting the character building of boys and to advance the educational, vocational, recreational, civic, social, commercial and economical interests in and about the City of El Monte, California, and surrounding areas in the County of Los Angeles, State of California."[8]

(2) In 1946 Paul C. Jones, an attorney who had been an active member of Medicine Lodge, procured a letter dated October 17, 1946, from the Franchise Tax Commissioner. which letter states in part: "The Franchise Tax Commissioner has held [Medicine Lodge] to be exempt from taxation under the Bank and Corporation Franchise Tax Act upon the ground that it is a corporation organized and operated *exclusively for charitable or educational* purposes." (Italics added.) Mr. Jones stated that he "obtained said letter on behalf of Medicine Lodge for its use in connection with soliciting a donation from Hollywood Turf Club Associated Charities, Inc." In 1946 a gift was made to Medicine Lodge in the amount of $500 by the Hollywood Turf Club Associated Charities, Inc., which organization is restricted to disbursing funds to tax-exempt charitable organizations. An official of the turf club declared that Medicine Lodge made application for the gift and supported its application with a copy of the letter from the Franchise Tax Commissioner and a second letter dated October 21, 1946, from the United States Commissioner of Internal Revenue, which provided in pertinent part: "It is the opinion of this office, based upon the evidence presented, that you are exempt from Federal income tax under the provisions of section 101(6) of the Internal Revenue Code and corresponding provisions of prior revenue acts, as it is shown that you are organized and operated exclusively for charitable purposes."[9]

(3) It is provided in the by-laws of Medicine Lodge that "The purpose of Medicine Lodge shall be to promote, foster,

[8]This tax-exempt status for which Medicine Lodge applied in 1943 required only that it be organized and operated exclusively "for pleasure, recreation, and other nonprofitable purposes, no part of the net earnings of which inures to the benefit of any private shareholder." (Stats. 1943, p. 2898.)

[9]As a nonprofit corporation, Medicine Lodge itself was entitled to a tax-exempt status irrespective of any charitable status or purpose.

encourage and stimulate the social welfare and well being of boys.''

(4) A membership application form of Medicine Lodge recites, inter alia: ''Medicine Lodge is a democratic *charitable, non-profit, fraternal* organization founded in 1943 to serve youth, regardless of class, creed or color, and to promote, foster, encourage and sponsor activities for character building, and to advance interest in educational, vocational, recreational, civic and social studies, and to maintain a camp to facilitate these activities.'' (Italics added.)

(5) In 1949 Medicine Lodge had brochures printed featuring on the front thereof the motto ''Service to Youth,'' and stating the purpose of the corporation in the identical language as that appearing in item (4) above. The brochure also described a camp owned and maintained by Medicine Lodge and provided a form for making a ''contribution'' to, and for applying for membership in, Medicine Lodge. The following statement also appeared in small print: ''Contributions are deductible on income tax accountability.''

(6) A second brochure, similar to that described above, was distributed by a member in 1954. The following language, under the heading, ''Purpose,'' appeared thereon: ''Now with our vast population becoming more crowded in Southern California, it is essential that we have far-sighted planning in all fairness to our youth in this community. Normal boys and girls need wholesome, body building, mind cultivating activities to develop good sportsmanship and leadership. It was for these needs that MEDICINE LODGE was founded.'' As with the earlier brochure, the motto ''Service to Youth'' was featured and the statement was made that ''Any contribution to this organization is deductible from your Income Tax.''

(7) A postal card distributed by Medicine Lodge and announcing a general meeting of its members, provided in part as follows: ''Remember we are striving to serve the youth of our community and give them a place to help their leaders build character.''

(8) A letter addressed to the membership and seeking the payment of annual dues, states in part: ''Never in the history of our country before has there been a greater need for providing facilities such as our organization offers to the youth of our area—the San Gabriel Valley area.''

(9) Medicine Lodge featured on its bank checks and stationery, the motto ''Service to Youth.''

We take up the foregoing in the order presented.

While the stated purposes contained in item (1) of "solely of promoting the character building of boys" and advancing "educational, vocational, recreational, civic, social, commercial and economical" interests suggest charitable endeavors, such statement of purposes is sufficiently ambiguous to require the resort to other evidence to determine its meaning. Moreover, item (1) relates to an application for a tax-exempt status which is dependent upon the corporation's *nonprofit* rather than its *charitable* character. Clearly the statements were directed towards establishing that the corporation "does not contemplate pecuniary gain or profit to the members thereof" (former Civ. Code, § 595, subd. 2; see fn. 6, *ante*). But it cannot be concluded from the document in question that the character of the corporation was "charitable" as well as "nonprofit." In *Walsh* v. *Walsh* (1941) 18 Cal.2d 439, 443-444 [116 P.2d 62], we held that when a contract is ambiguous or uncertain " 'it is primarily the duty of the trial court to construe it *after a full opportunity afforded all the parties in the case to produce evidence of the facts, circumstances and conditions surrounding its execution and the conduct of the parties relative thereto,*' " that the question of its meaning was therefore one of fact to be tried on the merits, and that the drastic procedure of summary judgment could not be resorted to as a substitute. We believe these principles are applicable here.

Although the matters embraced within item (2) are unquestionably relevant, nevertheless they do not establish that the tax rulings were obtained and the $500 gift sought by an officer or other representative who was duly authorized to do so and in the course of such actions to thereby invest the corporation with a charitable status. Of course it cannot be gainsaid that the gift was accepted.

The various purposes of Medicine Lodge, as set out in items (3), (4), (5) and (6) are generally consistent with the purposes expressed in the articles of incorporation. Although charitable purposes are provided, the corporation is nevertheless described, inter alia, as "a fraternal organization." Most significant, of course, is the claimed deductibility of contributions as set out in the brochures constituting at least an implied admission of charitable character. However, there is no claim that any gift was ever made in response to the brochures.

The particular significance of items (7), (8) and (9) is

that among the corporate purposes was service to youth, a matter established by the articles.

The foregoing items deal generally with the same matters as provided for in the articles of incorporation, and constitute for the most part but a further declaration of the purposes of the corporation. They and other assertions include little reference to the manner in which Medicine Lodge conducted itself, whatever its declared purposes. The declarations of defendants on the other hand are primarily concerned with the manner in which Medicine Lodge conducted its business. These are matters of proper inquiry (*Hallinan* v. *Prindle*, *supra*, 220 Cal. 46, 49), even in that situation where the corporation itself seeks to produce evidence inconsistent with articles, in proof of its true character. (*Stonaker* v. *Big Sisters Hospital, supra*, 116 Cal.App. 375, 378.) In any event, we must examine the defendants' factual declarations to determine if they, together with the foregoing matters, present triable issues.

The first declaration of Lyle A. Spilman, filed on behalf of defendants, recites that he organized Medicine Lodge; that the corporation was formed at a time when, due to the national emergency, there were limitations on travel and recreation; that the ''club'' was generally open to anyone as a member; that its dues were $5 annually; that it had as many as fifty members at one time; that oftentimes members necessarily made contributions other than annual dues to meet the corporation's obligations; that the only asset of value it acquired was approximately thirty acres of rural land, which cost $4,000 in 1944, the final payment for which was made in 1960; that payment for the land was made over the years from membership fees, assessments and prize money from the county fair; that because the corporation had insufficient funds with which to meet its final payment, it was necessary at that time to sell approximately five acres of its lands to pay the balance of the purchase price, taxes and other expenses; that the property was improved to provide for lavatory facilities, a lighted patio area, and a graded athletic field. Functions of the club, during the time it was active, included regular family social activities, usually potluck once each month, with entertainment, playing of games, craft studies and training, and the making of Indian artifacts. Family campouts and hiking were participated in before the surrounding area became developed. An annual Christmas party for the members was held, and the club submitted entries to

the Pomona County Fair, winning approximately $1,500 in prize money.

Mr. Spilman further declared that beginning in the late 1950's membership began to fall off and vandals damaged the property, completely destroying the lavatories; that the payment of taxes became a burden the corporation could no longer meet and, in general, the purposes for which the property had been acquired by Medicine Lodge and the purposes for which Medicine Lodge had been founded could no longer be served, with the development of other lands in the community; that the lands had not been utilized for any purpose whatsoever during the five-year period immediately preceding the making of the declaration; that by 1960 the club membership had been reduced to five members, and at that time the membership was closed; that thereafter it was concluded to dissolve the corporation and distribute its assets to its then members. At that time the lands had a value in excess of $300,000.

In his second or supplemental declaration in support of the motion to vacate the judgment Mr. Spilman further states that he was a member of the board of control of Medicine Lodge during its entire existence except during 1946; that the corporation solicited no charitable gifts from organized charities in any of the years he was a member of the board of control; that it refused to participate as a charity with the Community Chest; that it did accept unsolicited gifts, averaging only $30 per year excluding the Hollywood Turf Club gift, from sources other than its members; that Medicine Lodge never applied for a welfare tax exemption for the real property acquired by it (see Rev. & Tax. Code, § 214) ; that in the main the property was used for the benefit of the members of Medicine Lodge and their families, although various youth organizations were permitted the use of the property from time to time.

The foregoing, most of which is uncontradicted, constitutes substantial support for defendants' contention that Medicine Lodge conducted itself during its corporate existence as a social or fraternal organization, consistent with its declared purposes as such, as well as its other declared purposes as a charitable corporation.

As previously stated, the pivotal question is whether a triable issue has been raised on the question of a charitable trust. There is, as we have pointed out, evidence of an exclusive charitable purpose found in the documents pertaining to

the $500 gift and also found in the corporation's brochures stating that all contributions were deductible. On the other hand, the record is silent as to whether the corporation knowingly and intentionally committed itself to a character exclusively charitable or that those involved in the $500 gift transaction were duly authorized to make such commitment.[10] These portions of plaintiff's affidavits must be considered with the contraposed assertions of Mr. Spilman that Medicine Lodge never sought a welfare tax exemption on the ground of an irrevocable dedication for an exempt purpose (Rev. & Tax. Code, § 214), but continuously paid real property taxes; that it refused to participate as a Community Chest recipient; that it never solicited a charitable gift with the possible exception of the above-mentioned solicitation during 1946; and that unsolicited contributions other than the 1946 gift were not of great substance. Also to be considered is the fact that the history of the corporate activities demonstrates an initial and continuing purpose to engage in social and fraternal activities and to have so engaged before, during and after the claimed 1946 declarations of exclusive charitable purposes. Finally, it should be noted that nothing in the indicated record connects the 1946 gift of $500 or for that matter any other gift allegedly "charitable" with the real property now sought to be impressed with a trust. Nor has any claim been made that such funds were applied either to the purchase price or to defray the cost of any improvements on such property.[11]

Our previous examination of the articles of incorporation of Medicine Lodge led us to the conclusion that it was not organized exclusively for charitable purposes but for several purposes, some charitable and some noncharitable. Our examination of the extrinsic evidence dehors the articles further convinces us that the corporation does not appear from the manner of conducting its activities to be exclusively charitable. In our view issues of fact remain to be resolved bearing upon the central question as to whether the corporation conducted and represented itself to be primarily or

[10]Although defendants acknowledge that Medicine Lodge made application for the gift, they deny, and the record does not disclose, that in so doing Medicine Lodge made any representation as to its character.

[11]No claim is here made that the lands, apart from the character they may have acquired by virtue of the charitable nature of Medicine Lodge, were acquired for or specially devoted to a charitable use such as would impress them with a trust aside from the charitable or noncharitable character of Medicine Lodge. (Cf. *Estate of Henderson, supra,* 17 Cal.2d 853, 859.)

predominantly charitable.[12] On a motion for summary judgment, if a single issue of fact is found, the trial court is powerless to proceed and must allow such issue to be tried. (*Walsh* v. *Walsh, supra,* 18 Cal.2d 439, 441.) If, after an examination of the affidavits, doubt exists as to whether summary judgment should be granted, such doubt should be resolved against the moving party. (*Snider* v. *Snider* (1962) 200 Cal.App.2d 741, 748 [19 Cal.Rptr. 709].) On the totality of the record before us, we cannot say that there are no triable issues as to whether Medicine Lodge was a charitable corporation, whether such charitable character, if any, was such as to impress all its assets with a charitable trust, and whether the real property here involved was subject to such trust. Although it seems unnecessary, we add the *caveat* that we herein give no intimation as to the resolution of such triable issues but have confined ourselves merely to a determination that they do exist.[13]

We are satisfied that the trial court was warranted in concluding that the summary judgment was taken against defendants because of inadvertence and excusable neglect of their attorneys and that defendants had a meritorious

[12]On the record before us, the following material factors, among others, appear to be of unresolved significance: commitments by Medicine Lodge, including those which may be implied from the conduct of its affairs, to an exclusively or predominantly charitable status; representations which Medicine Lodge or its authorized agents may have made as to its character in seeking benefits, including those representations, if any, which were duly made to the Franchise Tax Commissioner, the Commissioner of Internal Revenue, the Hollywood Turf Club Associated Charities, Inc., and to the general public; the receipt and acknowledgment of solicited gifts of a charitable character; the utilization of gifts so received; the character of its corporate existence which Medicine Lodge represented to the public; the emphasis that Medicine Lodge attached to its activities which may be described as fraternal and social, as distinguished from those charitable in character; which, if either, type of activity was subordinate to the other, and the particular utilization of the lands in question.

[13]Both parties have urged upon us in differing contexts a number of decisions dealing with the tax-exempt status of property flowing from an irrevocable dedication to an exempt purpose. (Rev. & Tax. Code, § 214.) (See *Pacific Home* v. *County of Los Angeles, supra,* 41 Cal.2d 844; *Pasadena Hospital Assn.* v. *County of Los Angeles* (1950) 35 Cal.2d 779 [221 P.2d 62]; *Goodwill Industries* v. *County of Los Angeles* (1953) 117 Cal. App.2d 19 [254 P.2d 877]; *Moody Institute of Science* v. *County of Los Angeles* (1951) 105 Cal.App.2d 107 [233 P.2d 51].) Not only are these cases distinguishable on the ground that they are concerned with whether an entity was entitled to an ad valorem tax exemption for its lands so dedicated, but none to which we are referred deal with the question whether a corporation, whose articles provide for charitable among other purposes, can be deemed by its conduct to have caused a charitable trust to be impressed on its properties.

defense to plaintiff's motion. Its order vacating the summary judgment and vacating the order directing summary judgment was proper under the circumstances and must be upheld.

The order appealed from is affirmed. Defendants' cross-appeal from the summary judgment is dismissed as moot. Defendants shall recover costs on appeal.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Burke, J., and White, J.,* concurred.

The petition of the plaintiff and appellant for a rehearing was denied October 11, 1967. White, J.,* sat in place of Mosk, J., who deemed himself disqualified.

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.