7 Cal.App.3d 518 (1970)
86 Cal. Rptr. 593
OUTDOOR IMPORTS, INC., Plaintiff and Appellant,
v.
NAT STANOFF, Defendant and Respondent.
Docket No. 35312.
Court of Appeals of California, Second District, Division One.
May 11, 1970.
*520 COUNSEL
Cooney & Cooney, Terrence W. Cooney and Harold E. Hanson for Plaintiff and Appellant.
Hansen & Dillman and James N. Hansen for Defendant and Respondent.
OPINION
LILLIE, J.
On September 3, 1968, plaintiff sued defendant for conversion of merchandise; default judgment in the amount of $23,783.50 was entered October 22, 1968. On March 7, 1969, defendant filed notice of motion to vacate default and default judgment. Plaintiff appeals from order granting the motion.
The following background was presented to the trial court by way of supporting declarations of defendant and his counsel, Mr. Hansen. Plaintiff was incorporated in 1966; defendant was a director and secretary-treasurer and owned 50 percent of the stock, D'Anfrasio owned the other 50 percent; the board of directors consisted of defendant, D'Anfrasio and Terrence W. Cooney, attorney for plaintiff who kept all records and upon whom the parties relied for advice. Differences arose between defendant and D'Anfrasio and in April 1968 they met informally in Mr. Cooney's office where D'Anfrasio orally agreed to buy defendant's stock in plaintiff corporation and Mr. Cooney was to prepare the papers; the papers were never prepared, *521 the agreement never reduced to writing and D'Anfrasio never complied, thus defendant continued to act as secretary-treasurer, countersigning all corporate checks. In August 1968 defendant consulted his lawyer, Mr. Hansen, about the corporate affairs and on August 28, Mr. Hansen wrote Mr. Cooney requesting certain corporate information, including the status of stock issued, copies of bylaws and corporate minutes.
On September 3, 1968, defendant was served with copy of summons and complaint which bore no date, case number or other confirmation showing an action had been filed, and appeared to be a copy of an unfiled lawsuit (attached to defendant's declaration is copy of unnumbered, undated summons served on him [Exh. A]).[1] Thus, in the light of his differences with D'Anfrasio and the fact that he had received no notice of any board meeting at which the filing of a lawsuit was discussed and knew of no corporate action authorizing the same, defendant believed that no lawsuit had actually been filed and that the papers were served on him solely as a threat to force him to agree to less favorable terms for the sale to D'Anfrasio of his interest in plaintiff corporation. He immediately advised Mr. Hansen who explained to him that there was no necessity for filing an answer to an unfiled lawsuit. During this time Mr. Hansen had several telephone conversations with Mr. Cooney and a letter from him dated September 9, 1968, but at no time did Mr. Cooney make any reference to a lawsuit. Thus, based upon his knowledge of defendant's differences with D'Anfrasio, the fact that the papers served on defendant appeared to be copies of an unfiled lawsuit, the absence of corporate action for authority to file an action and Mr. Cooney's silence concerning the same knowing he represented defendant, Mr. Hansen did not believe any lawsuit had in fact been filed.
It was not until the end of October[2] or early November 1968 when his bank account was levied upon that defendant learned of the lawsuit and advised Mr. Hansen who immediately contacted Mr. Cooney, informed him of the purported service and suggested that they attempt a settlement of the ownership of plaintiff corporation; Mr. Cooney agreed. To that end the principals met in Mr. Cooney's office on December 6, 1968, but after subsequent telephone conversations, it became evident that settlement negotiations had failed. Mr. Cooney, who had not furnished the corporate books requested in August, finally made them available to Mr. Hansen for inspection around the middle of December 1968; they disclosed one board meeting on October 11, 1966, but no others except a purported meeting not noticed and attended only by Mr. Cooney and D'Anfrasio on April 11, *522 1968, at which, on the assertion that defendant "declined" to perform his duties as secretary-treasurer, Mr. Cooney was purportedly elected as secretary and the president purportedly authorized to sign all checks alone. The facts of this purported meeting and its outcome were withheld from defendant and no notification was ever given to him of his alleged removal; defendant continued to sign the corporate checks. The foregoing was largely uncontroverted by the brief affidavit of Mr. Cooney.
(1) A motion for relief from default under section 473, Code of Civil Procedure, is addressed to the sound discretion of the trial court and its ruling thereon will not be disturbed on appeal in the absence of a clear showing of abuse of discretion. (Weitz v. Yankosky, 63 Cal.2d 849, 854 [48 Cal. Rptr. 620, 409 P.2d 700]; Freeman v. Goldberg, 55 Cal.2d 622, 625 [12 Cal. Rptr. 668, 361 P.2d 244]; Beard v. Beard, 16 Cal.2d 645, 647 [107 P.2d 385]; McNeil v. Blumenthal, 11 Cal.2d 566, 567 [81 P.2d 566].) It is well settled that appellate courts have always been and are favorably disposed toward orders excusing defaults and permitting controversies to be adjudicated upon their merits. Such orders are rarely reversed and never unless it clearly appears that there has been a plain abuse of discretion. (Lynch v. Spilman, 67 Cal.2d 251, 257-258 [62 Cal. Rptr. 12, 431 P.2d 636]; Weitz v. Yankosky, 63 Cal.2d 849, 854-855 [48 Cal. Rptr. 620, 409 P.2d 700]; Benjamin v. Dalmo Mfg. Co., 31 Cal.2d 523, 525 [190 P.2d 593].)
(2) The issues before the trial court were whether defendant's neglect to file an answer within the statutory time was excusable (Weitz v. Yankosky, 63 Cal.2d 849, 855 [48 Cal. Rptr. 620, 409 P.2d 700]), he had a meritorious defense (Lynch v. Spilman, 67 Cal.2d 251, 259 [62 Cal. Rptr. 12, 431 P.2d 636]) and he acted seasonably to set aside default after discovering it had been entered (Benjamin v. Dalmo Mfg. Co., 31 Cal.2d 523, 528 [190 P.2d 593]). (3) Since the issues raised by defendant's motion were tried on affidavits, we are "`bound by the same rule as where oral testimony is presented for review.' [Citations.] When an issue is tried on affidavits, the rule on appeal is that those affidavits favoring the contention of the prevailing party establish not only the facts stated therein but also all facts which reasonably may be inferred therefrom, and where there is a substantial conflict in the facts stated, a determination of the controverted facts by the trial court will not be disturbed." (Griffith Co. v. San Diego College for Women, 45 Cal.2d 501, 508 [289 P.2d 476, 47 A.L.R.2d 1349]; Luz v. Lopes, 55 Cal.2d 54, 62 [10 Cal. Rptr. 161, 358 P.2d 289]; Beckett v. Kaynar Mfg. Co., Inc., 49 Cal.2d 695, 699 [321 P.2d 749].) The rule is applied to orders made on motions for relief from default under section 473, Code of Civil Procedure. (Lynch v. Spilman, 67 Cal.2d 251, 259 [62 Cal. Rptr. 12, 431 P.2d 636].)
*523 (4a) In granting the motion the trial court necessarily concluded that default had been taken against defendant through his "inadvertence and excusable neglect"; inherent in this conclusion is the factual finding either that defendant was served one day (September 3, 1968[3]) before the summons was in fact issued (September 4, 1968) or that he was served on September 4, 1968, with copy of summons and complaint not conformed to the original. It is undisputed that the copy served on defendant bore neither stamp, date nor other confirmation that a suit had actually been filed. Whether the conduct of Mr. Cooney in either situation amounted to the "misconduct, concealment and deceit" charged by respondent, at the very least it reflects carelessness on his part. If, as Mr. Cooney declares, in his experience as a lawyer his clients on "numerous occasions" have been served with unnumbered and undated copies of summons and complaint, it is a "practice" condemned and any lawyer who engages therein stultifies his conscience by swearing under oath that defendant was "regularly served with process" knowing that the same was not a conformed copy. Further, there is no denial that during discussions and correspondence with Mr. Hansen subsequent to September 3, 1968, even though he knew Mr. Hansen represented defendant, Mr. Cooney failed to mention the existence of the lawsuit or his intention to take a default. As said in Smith v. Los Angeles Bookbinders Union, 133 Cal. App.2d 486, 500 [284 P.2d 194], "The quiet speed of plaintiffs' attorney in seeking a default judgment without the knowledge of defendants' counsel is not to be commended." (Lynch v. Betts, 198 Cal. App.2d 755, 758 [18 Cal. Rptr. 345].)
Appellant claims that four and one-half months elapsed after entry of judgment before defendant filed the notice of motion and he failed to sustain his burden of showing due diligence. (5) The application for relief "must be made within a reasonable time, in no case exceeding six months, after such judgment, order or proceeding was taken" (§ 473, Code Civ. Proc.), and the moving party has the burden of showing not only an excuse for his default but diligence in making the motion after discovery of the default. (Benjamin v. Dalmo Mfg. Co., 31 Cal.2d 523, 528-529 [190 P.2d 593].) Thus, under section 473 what constitutes "a reasonable time" presents a question of fact for determination of the trial court unless circumstances are such as to demonstrate unreasonable delay as a matter of law. (Baxter v. Prescott, 158 Cal. App.2d 531, 534 [322 P.2d 1008].)
(4b) In Benjamin v. Dalmo Mfg. Co., 31 Cal.2d 523 [190 P.2d 593], relied on by appellant, in which there was a delay of three and one-half *524 months, "defendant furnished no explanation in the trial court, either by affidavit or testimony, for its dilatory procedure." (P. 528.) Here the defendant's declarations offer sufficient explanation to support the implied finding of diligence. Mr. Cooney conceded that there were settlement negotiations but limited the same to "the latter part of October 1968 and about the first of November 1968" and asserted that he "repeatedly told [Mr. Hansen] that he would have to move to vacate the default and the judgment and that [their] discussions should in no way delay him in filing such motion." However, Mr. Hansen's declaration, which under the appellate rule of Griffith v. San Diego College for Women, 45 Cal.2d 501, 508 [289 P.2d 476, 47 A.L.R.2d 1349], establishes the facts herein, reveals that defendant discovered the default around the first of November after which settlement negotiations continued until approximately the middle of December when Mr. Cooney produced the records for his inspection. The pendency of negotiations for settlement were deemed significant in Beard v. Beard, 16 Cal.2d 645, 647 [107 P.2d 385]; Baxter v. Prescott, 158 Cal. App.2d 531, 533 [322 P.2d 1008]; and Dahlin v. Moon, 141 Cal. App.2d 1, 5 [296 P.2d 344]. Deferring to the immediate subsequent holidays, we compute the time here from the first of January 1969, a period of two months and seven days. We cannot say under the totality of the circumstances of this case that the facts are not so unexplained and unreasonable as to bar defendant from relief. (See Freeman v. Goldberg, 55 Cal.2d 622, 625 [12 Cal. Rptr. 668, 361 P.2d 244] [two and one-half months' delay]; Hallett v. Slaughter, 22 Cal.2d 552, 554 [140 P.2d 3] [two months' delay]; Bailey v. Roberts, 271 Cal. App.2d 282, 287 [76 Cal. Rptr. 572] [two months' delay]; Hammel v. Lindner, 224 Cal. App.2d 426, 429 [36 Cal. Rptr. 656] [six months' delay]; Arnke v. Lazzari Fuel Co., 202 Cal. App.2d 278, 280 [20 Cal. Rptr. 762] [two months' delay].) Certainly the evidence does not demonstrate unreasonable delay as a matter of law. (Baxter v. Prescott, 158 Cal. App.2d 531, 534 [322 P.2d 1008].) There is no clear showing that there has been a plain abuse of discretion on the part of the trial court.
The order is affirmed.
Wood, P.J., and Gustafson, J., concurred.
NOTES
[1] The original summons shows that in fact it was issued on September 4, 1968.
[2] Writ of execution issued October 29, 1968.
[3] The original summons bears September 4, 1968, as the date of issuance, and while the affidavit of service discloses service of summons and complaint on September 4, 1968, defendant swore in his declaration that he was served September 3, 1968.