[Civ. No. 60407. Second Dist., Div. Four. July 20, 1981.]

EVELLE J. YOUNGER, as Attorney General, etc., Plaintiff and Respondent, v.
WISDOM SOCIETY et al., Defendants and Appellants.

684

---

## COUNSEL

Edward J. Horowitz and Gordon Levoy for Defendants and Appellants.

George Deukmejian, Attorney General, and James M. Cordi, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

KINGSLEY, Acting P. J.—Respondent Attorney General filed an action for enforcement of Government Code sections 12585 and 12586, subdivision (a) against the Wisdom Society and Leon Gutterman, (president and editor-in-chief), and Betty Jane Lang, (vice president and editorial and research director), to require the Wisdom Society and its trustees to file with the Attorney General certain documents, including annual financial reports. The Attorney General sought to have the Wisdom Society declared a "charitable corporation" within the meaning of Government Code section 12582.1 and therefore subject to reporting and other regulations related to charitable corporations. The trial court found that the Wisdom Society is a nonprofit educational corporation operated exclusively for educational purposes and made a conclusion of law that the "Wisdom Society" is a "charitable corporation" within Government Code section 12582.1. The court ordered the Wisdom Society, Gutterman and Lang to comply retroactively with the reporting requirement of Government Code section 12586, and ordered Gutterman and Lang to pay reasonable expenses incurred by the office in investigation and prosecution of the action. Appellants' motion for new trial was denied and they appeal.

The Wisdom Society is a nonprofit educational publishing corporation, and Gutterman and Lang are the only directors. Gutterman and Lang received compensation occasionally when funds came in. Gutterman had loaned to the society money, which still remains unpaid. Gutterman and Lang personally did the research, writing and editing of the society's publications. The society's work involved interpretation of the wisdom of great scholars and of persons of historical importance. The publications dealt with such persons and subjects as William Shakespeare, Carl Sandburg, Robert Frost, Thomas Edison, Moses, Jesus, the Holy Bible, Will Durant, Felix Frankfurter, Arnold Toynbee, Picasso, Ernest Hemingway, Pope Pius XII, Eleanor Roosevelt, Dwight Eisenhower, Bertrand Russell, Dr. Jonas Salk, Nehru, Walt Disney, Winston Churchill and others. Gutterman himself conducted interviews with many of the living subjects of his articles.

The Wisdom Society used written advertising and promotional material in soliciting financial support from members of the public for the furtherance of its corporate purposes. The society established the Wisdom Hall of Fame, which offered membership to persons who achieved distinction in major fields. The materials sent out to the award recipients inform the recipient that he has been nominated by the "Board of Editors and deemed worthy of the highest status, highest prestige award of education in America: the Wisdom Award of Honor." The recipient is requested to accept the award by returning the reply card which requests the recipient to make a $100 "gift" to help the educators and editors of Wisdom bring this valuable $1.7 million encyclopedia to publication for the advancement of learning and education, and to spread wisdom among all people. The society promised recipients who gave the $100, free receipt of the Wisdom's encyclopedia when published. The encyclopedia was published one year before trial.

The Wisdom Society through its attorney applied to the state Franchise Tax Board for an exemption from California State Franchise tax, when the society was formed and the exemption was granted on the ground that the Wisdom Society was organized and operated exclusively as an educational organization. The letter from the Franchise Tax Board granting the exemption stated that the contributions to the Wisdom Society are deductible to the donor. The society never claimed contributions to it were deductible for federal income tax purposes and no federal income tax exemptions were sought. The society filed federal and state tax returns as any nonprofit corporation would do. The money given by recipients of the awards were not deductible on the recipient's tax returns.

The Wisdom Society did not file articles of incorporation under Government Code section 12585 (which deals with charitable corporations) nor did it file any periodic reports under Government Code section 12586, subdivision (a). The society has never paid income tax but it did file federal and state tax returns as a "nonprofit corporation."

The articles of incorporation set forth as its purpose the following: "To promote, stimulate and encourage public interest in support of knowledge, learning and education and to search for new knowledge and understanding by advancing the educational welfare of mankind; and to create and publish educational magazines and books dedicated to the development of the human mind and to the betterment of mankind."

The material requesting the $100 from recipients set forth the following objectives 1-5:

"No. 1. To contribute to the advancement of the intellectual life of our nation by stimulating and encouraging the sincere pursuit of learning and wisdom. No. 2. To cultivate in the largest possible number of our future citizens a deeper understanding and appreciation of the benefits which come to them from education and wisdom. No. 3. To communicate wisdom as well as to inspire the love of acquiring wisdom. No. 4. To ennoble and enrich the resources and capacities of the human mind and heart. No. 5. To contribute to the intellectual and cultural advancement of our beloved country and thereby to the enrichment of civilization."

█ The sole question presented by the appeal is whether the trial court properly concluded that the Wisdom Society is a "charitable corporation" within the meaning of Government Code section 12582.1 and is, therefore, subject to the reporting requirements of the Government Code sections dealing with charitable corporations.

Sections 12585 and 12586, subdivision (a) impose on charitable corporations and their trustees the following requirements:

Section 12585: "Every charitable corporation and trustee subject to this article who has received property for charitable purposes shall file with the Attorney General, within six months after any part of the income or principal is authorized or required to be applied to a charitable purpose, a copy of the articles of incorporation or other instrument providing for his title, powers or duties."

Section 12586, subdivision (a): "Except as otherwise provided and except corporate trustees which are subject to the jurisdiction of the Superintendent of Banks of the State of California or to the Comptroller of Currency of the United States, every charitable corporation and trustee subject to this article shall, in addition to filing copies of the instruments previously required, file with the Attorney General periodic written reports, under oath, setting forth information as to the nature of the assets held for charitable purposes and the administration thereof by the corporation or trustee, in accordance with rules and regulations of the Attorney General."

Therefore, if the Wisdom Society is a "charitable corporation" within section 12582.1, the society must comply with the above reporting and registration requirements of sections 12585 and 12586, subdivision (a).

Section 12582 reads as follows: "'Trustee' means (a) any individual, group of individuals, corporation, or other legal entity holding property in trust pursuant to any charitable trust, (b) any corporation which has accepted property to be used for a particular charitable corporate purpose as distinguished from the general purposes of the corporation, and (c) a corporation formed for the administration of a charitable trust, pursuant to the directions of the settlor or at the instance of the trustee."

Section 12582.1 defines charitable corporations as follows: "'Charitable corporation' means any nonprofit corporation organized under the laws of this State for charitable or eleemosynary purposes and any similar foreign corporation doing business or holding property in this State for such purposes."

Thus, the question before us becomes whether the Wisdom Society was organized for "charitable or eleemosynary purposes."

The law is clear that a nonprofit corporation organized for the advancement of education is a charitable corporation. (See *Lynch v. Spilman* (1967) 67 Cal.2d 251 [62 Cal.Rptr. 12, 431 P.2d 636] and *Estate of Connolly* (1975) 48 Cal.App.3d 129 [121 Cal.Rptr. 325].)

A reading of the articles of incorporation as a whole should determine the real purpose of a particular institution, but its character is not to be determined alone by the powers and purposes defined in its articles, but also by the method of transacting business. (*Stewart v. California Medical etc. Assn.* (1918) 178 Cal. 418 [176 P. 46].) The court can take into consideration the actual conduct of the corporation in its method of operation. (*Calif. Emp. Com.* v. *Betthesda Foundation* (1942) 54 Cal.App.2d 348 [128 P.2d 874].) In the case at bar, a reading of the Wisdom Society's articles of incorporation as a whole, indicates that the Wisdom Society was formed for educational purposes, for the advancement of knowledge, and the educational welfare of mankind. And when we examine the actual conduct of the Wisdom Society, its method of operation and its procedure for transacting business, we see that the corporation was conducted as a charitable corporation in that it was dedicated to disseminating publications of strictly an educa-

tional nature, i.e., its publications were limited to informing readers on many literary, philosophical, religious, scientific, historical, political and other subjects.

In the case at bench, both the purposes as set forth in articles of incorporation and also the actual conduct of Wisdom were more than sufficient to sustain the action of the trial court in its conclusion that the Wisdom Society is a charitable corporation.

Nevertheless, appellants' brief raises several interesting arguments that merit the attention of the court.

I

Appellants argue that the findings of fact do not support the conclusion of law that the Wisdom Society is a charitable corporation. Specifically, appellants argue that the court below finding of fact No. 2,[1] that the Wisdom Society is formed for exclusively educational purposes, and its finding No. 3, that the Wisdom Society has received assets which were applied to corporate purposes, are inconsistent with the conclusion of law that the corporation is a charitable corporation. In other words, appellants argue that the conclusion of law that a corporation is a charitable corporation within section 12582.1 does not follow from the finding of fact that a nonprofit corporation is "formed and operated exclusively for educational purposes."

We do not agree. Although nonprofit corporations are certainly not synonymous with charitable corporations, a nonprofit corporation whose purpose is educational has been held a charitable corporation in *Estate of Connolly* (1975) 48 Cal.App.3d 129 [121 Cal.Rptr. 325]. Furthermore, an educational purpose related to learning has been held to be a charitable use (*Estate of Hinckley* (1881) 58 Cal. 457; *Estate of Butin* (1947) 81 Cal.App.2d 76 [183 P.2d 304]), and a trust for promotion of education generally is charitable in nature. (*Estate of Bailey* (1937) 19 Cal.App.2d 135 [65 P.2d 102]; *Estate of Peck* (1959) 168 Cal.App.2d 25 [334 P.2d 185].) *Lynch v. Spilman* (1967) 67 Cal.2d 251 [62 Cal. Rptr. 12, 431 P.2d 636] defined a charitable corporation as one created for or devoted to charitable purposes, including the relief of poverty, the

---

[1]Findings 2 and 3 read as follows: "2. Wisdom Society is formed and operated exclusively for educational purposes as set forth in its articles of incorporation." [¶] 3. Wisdom Society has received assets in the course of its operations which have been applied to the furtherance of its corporate purposes."

advancement of *education* or religion, the promotion of health, government or municipal purposes, and other purposes the accomplishment of which are beneficial to the community as a whole. Therefore, the conclusion of law that a corporation is a charitable corporation follows from the fact that a nonprofit corporation is created for or devoted to educational purposes. Appellants' contention that the conclusion of law did not follow from the findings of fact is without merit.

## II

Appellants argue that the statutory scheme classifying nonprofit corporations differentiates between educational corporations and charitable corporations, and that the Wisdom Society was formed under Corporations Code section 9000 et seq., related to nonprofit corporations, and was not formed under Corporations Code section 10200 et seq., related to charitable corporations.[2] Appellants argue that the Legislature necessarily meant charitable corporations to be something different from other nonprofit corporations or they would not have had a separate section for charitable corporations.

The particular sections under which the corporation was formed is not conclusive on the issue of whether a corporation is charitable or not. In determining whether a corporation was organized exclusively for charitable purposes and therefore was exempt from unemployment contributions, the trial court in *Calif. Emp. Com.* v. *Betthesda Foundation* (1942) 54 Cal.App.2d 348 [128 P.2d 874] was not bound either by the articles of incorporation or by the particular code section that the corporation was formed under, but the court could consider the corporation's actual conduct and method of operation. (*Calif. Emp. Com.* v. *Betthesda Foundation, supra.*) Therefore, appellants' argument that Wisdom was formed under former code section 9200 dealing with nonprofit corporations having only three incorporators, rather than under former code section 10200, dealing with charitable corporations, requiring 25 incorporators, for a charitable corporation, would not be decisive on the issue of whether or not the corporation is a charitable corpora-

---

[2]Division 2 of the Corporations Code, as it existed when Government Code section 12582.1 was enacted, included the following parts: Part 1: "General Nonprofit Corporation Law." (Corp. Code, § 9000 et seq.) [¶] Part 2: "Corporations Sole." (Corp. Code, § 10000 et seq.) [¶] Part 3: "Corporations for Charitable or Eleemosynary Purposes." (Corp. Code, § 10200 et seq.)

tion. The court is not bound by the particular code section the corporation was formed under. (54 Cal.App.2d 348.)[3]

## III

Appellants argue that when the Legislature provided in section 10207 of part 3 that the Attorney General have supervisorial authority over charitable corporations, it necessarily precluded such supervisorial powers over "other nonprofit educational corporations." But as the court pointed out in *Estate of Connolly, supra,* (1975) 48 Cal.App.3d 129, a corporation whose purpose is education *is* a charitable corporation; it therefore follows that the Legislature intended supervisorial powers over charitable educational corporations as well as charitable corporations with other charitable purposes.

Furthermore, the Attorney General had the same power under former code sections over charitable nonprofit corporations organized under Corporations Code section 9000 et seq., as he had over charitable nonprofit corporations formed under section 10200 et seq. In *In re L. A. County Pioneer Society* (1953) 40 Cal.2d 852, 861 [257 P.2d 1], the court said, "Under the Corporations Code a charitable corporation is subject to the same supervision by the attorney general as is a nonprofit corporation holding its assets subject to a charitable trust (§§ 9505, 10207; see 26 So.Cal.L.Rev. 80), . . ."

## IV

Appellants argue that since the old code part 1 referred to general nonprofit corporations and part 3 of the old code referred to charitable or eleemosynary corporations, it follows that the Legislature meant a charitable corporation to be something more limited than an educational nonprofit corporation. While the Legislature obviously meant a charitable corporation to be something more limited than a nonprofit corporation, it does not follow that the Legislature meant that an educational corporation is not a charitable corporation. As we have stated before, a nonprofit corporation with an educational purpose *is* (or certainly can be) a charitable corporation. Appellants' argument would relate only to those nonprofit corporations that were not also charitable corporations.

---

[3]Respondent argues that section 9200 provided that a nonprofit charitable corporation could be formed with three or more persons. In any case, the particular code section under which the corporation was formed is not necessarily decisive.

Appellants argue that because Wisdom's publications were not free, it is not a charitable corporation. Whether or not a nonprofit corporation distributes material free or for money is not a criteria of whether a corporation is charitable or not. In *Estate of Bailey* (1937) 19 Cal. App.2d 135 [65 P.2d 102] the court held that a trust for the advancement of education is a charitable trust, where the learning is for public benefit rather than for private gain, and this does not mean that the education must be gratuitous. Similarly, where the educational publications of Wisdom are for public benefit rather than private gain, it is not significant that Wisdom charged for its publications. It is clear that the purposes of Wisdom were related for public benefit, i.e., to contribute to the intellectual life of our nation, and therefore the fact that Wisdom charged a price for its publications does not preclude the society from being a charitable corporation.

The judgment is affirmed.

Woods, J., and Foster, J.,* concurred.

Appellants' petition for a hearing by the Supreme Court was denied September 16, 1981.

---

*Assigned by the Chairperson of the Judicial Council.