[Civ. No. 55535. Second Dist., Div. Five. Nov. 23, 1979.]

**SOUTHERN CALIFORNIA EDISON COMPANY,**
Plaintiff and Appellant, v.
**HARNISCHFEGER CORPORATION,**
Defendant and Respondent.

COUNSEL

Schell & Delamer, Mark B. Pepys and Arthur E. Schwimmer for Plaintiff and Appellant.

Spray, Gould & Bowers, Richard C. Turner, Charles A. Bennett and Barry Bartholemew for Defendant and Respondent.

OPINION

**STEPHENS, Acting P. J.**—Defendant Harnischfeger Corporation has made a motion to dismiss plaintiff's appeal from a judgment in defendant's favor on the grounds that the appeal is now moot and that appellant has failed to diligently prosecute its appeal.

### Statement of Facts

On March 1, 1972, an accident occurred at one of Southern California Edison Company's (Edison) electric generating plants. A cable on a gantry crane broke, dropping a piece of heavy equipment. Edison brought suit for $6.5 million in property damage against defendant Harnischfeger Corporation (builders of the crane) and six other named defendants, including Crane Hoist Engineering and Parts Company, Inc. (Crane Hoist), involved in maintenance of the crane. One defendant was dismissed on a motion for summary judgment. Prior to trial, Harnischfeger Corporation also made a motion for summary judgment; the motion was granted and judgment in Harnischfeger's favor was entered on January 25, 1978. Edison's subsequent motion for a new trial

was denied on March 17, 1978. This appeal was filed on March 27, 1978.

The case went to trial against the remaining defendants and resulted in a general verdict in favor of Edison and against the remaining defendants in the amount of $4,589,053.37. The jury found 100 percent liability against the remaining defendants and no negligence on the part of Edison, here. Costs were also awarded Edison. Judgment was entered on April 6, 1978. Crane Hoist filed a motion for a new trial. On June 1, 1978, a full satisfaction of judgment in favor of Crane Hoist for the consideration of $4,652,298.37 was filed with the court. On June 19, 1978, Edison assigned any and all of its claims, demands and causes of action against Harnischfeger to Crane Hoist. Crane Hoist's motion for a new trial was taken off calendar.

Meanwhile, the record on this appeal was being processed. On February 27, 1979, the parties were notified that the record on appeal had been filed. On March 2, 1979, respondent filed its motion to dismiss the appeal. On April 6, 1979, and April 23, 1979, appellant received extensions of the time to file its opposition to the motion. On May 23, 1979, it associated counsel, and on May 24, 1979, received a further extension of the time to file its opposition. On June 4, 1979, appellant and Crane Hoist stipulated that the full satisfaction of judgment entered one year earlier was executed and taken under mutual mistake and the satisfaction was vacated by the court on June 8, 1979. On June 4, 1979, and June 15, 1979, respectively, Edison and Crane Hoist executed a covenant not to sue, back-dated to May 30, 1978. On June 14, 1979, appellant received another extension to file its opposition to respondent's motion and its opposition was filed June 21, 1979.

Edison argues that the concepts of satisfaction of judgment, release, and covenant not to sue should be merged and that respondent has no third party rights to challenge the vacation of the satisfaction of judgment.[1] In support of this concept it cites *Thomas* v. *General Motors Corp.* (1970) 13 Cal.App.3d 81 [91 Cal.Rptr. 301]. Alternatively, Edison contends that the appeal should be permitted to proceed to eliminate any possibility that a final judgment in Harnischfeger's favor

---

[1]We use the reference to Edison as appellant though by virtue of the assignment executed to Crane Hoist Edison no longer has any interest in the action, it having received full satisfaction for its losses from Crane Hoist at the time Crane Hoist paid the full amount of the judgment.

would collaterally estop Crane Hoist from seeking indemnity from Harnischfeger.

### Discussion

A satisfaction of judgment, a release, and a covenant not to sue are conceptually different. Even a brief look at the three concepts reveals their differences. A satisfaction of judgment, although allowed to be set aside for proper cause, is "the last act and end of the proceedings" (*Brochier* v. *Brochier* (1941) 17 Cal.2d 822, 825 [112 P.2d 602]; *Cason* v. *Glass Bottle Blowers Assn.* (1952) 113 Cal.App.2d 263, 267 [247 P.2d 931]). The satisfaction of judgment may be obtained through voluntary payment or through execution. The judgment debtor who fully satisfies the judgment may compel the satisfaction's entry on the record (Code Civ. Proc., § 675). In other words, a satisfaction of judgment is part of the judicial process. The effect of the full satisfaction on joint tortfeasors is immediate. ■ A full satisfaction of judgment against one tortfeasor discharges the joint tortfeasors so far as any rights may exist between plaintiff and joint tortfeasor, whether or not a judgment has been obtained against them. (*Winzler & Kelly* v. *Superior Court* (1975) 48 Cal.App.3d 385, 392-394 [122 Cal.Rptr. 259]; *Watson* v. *McEwen* (1964) 225 Cal.App.2d 771, 775 [37 Cal.Rptr. 677].)

Thus, the satisfaction is an immediate end of the litigation as it existed between the plaintiff and alleged joint tortfeasors. This does not, however, terminate all responsibility as between the joint tortfeasors since at least the decision in *American Motorcycle Assn.* v. *Superior Court* (1978) 20 Cal.3d 578 [146 Cal.Rptr. 182, 578 P.2d 899]. In *American Motorcycle Assn.,* the court stated (at p. 591): "...the California common law equitable indemnity doctrine should be modified to permit a concurrent tortfeasor to obtain partial indemnity from other concurrent tortfeasors on a comparative fault basis." And, on page 598, the court further stated: "In order to attain such a system, in which liability for an indivisible injury caused by concurrent tortfeasors will be borne by each individual tortfeasor 'in direct proportion to [his] respective fault,' we conclude that the current equitable indemnity rule should be modified to permit a concurrent tortfeasor to obtain partial indemnity from other concurrent tortfeasors on a comparative fault basis."

With this teaching in mind, we recognize the covenant not to sue/assignment as one which not only gave Crane Hoist the right to proceed

with the appeal from the summary judgment (in the name of Edison) but, if successful then, to seek indemnification.[2]

We note that the summary judgment exonerating Harnischfeger, if it becomes final, would preclude Crane Hoist of any viable claim of indemnification. We also note that Crane Hoist had no opportunity to control or participate in the litigation as between Edison and Harnischfeger. We recognize that the cross-complaint by Crane Hoist against Harnischfeger may have made more apparent Crane Hoist's interest in the *Edison* v. *Harnischfeger* action, but it did no more.

■ But, a release of a joint tortfeasor, on the other hand, is never obtained through execution but only through agreement of the parties. It is a relinquishment of plaintiff's right to sue. It may be negotiated both before or after the judgment has been entered. The effect of a release on joint tortfeasors is different from the effect of a satisfaction. The release of one tortfeasor before judgment does not discharge any other tortfeasors claimed to be liable for the same tort, but may reduce the claims against them. (Code Civ. Proc., § 877.)

■ A covenant not to sue, like a release, is negotiated. Unlike the release, plaintiff does not relinquish his right to sue by the covenant but subjects himself to an action for breach of the covenant should he continue suit (*Pellett* v. *Sonotone Corp.* (1945) 26 Cal.2d 705, 711-712 [160 P.2d 783, 160 A.L.R. 863]). Whether negotiated before or after judgment, a covenant not to sue affects the joint tortfeasors by reducing the amount of the claim against them (*Thomas* v. *General Motors Corp., supra,* 13 Cal.App.3d 81, 86.)

Thus, the conceptual differences between the three are distinct, especially in their effects on the obligations of joint tortfeasors. Edison argues that the court should eliminate any such distinction. We do not agree. In support of that argument, it quotes the Restatement Second of Torts, section 886, which equates a satisfaction or release of the judgment and a covenant not to sue, and applies the amount to diminish the other tortfeasors' liability. The restatement, however, also provides that if the issue of damages has been litigated to the preclusion of relitigation of the damages, a payment in full operates as a full satisfaction and there is no longer an enforceable claim (com. b). Although the re-

---

[2]As we understand the law, the judgment rendered established the amount of loss to Edison, but there still remained Crane Hoist's opportunity to seek partial or total indemnity.

statement is a persuasive authority, as Edison itself points out in its memorandum of points and authorities, California courts reject portions of the restatement which are in conflict with California decisional law.

Edison argues that a trend to abolishing the distinction is observed in *River Garden Farms, Inc.* v. *Superior Court* (1972) 26 Cal.App.3d 986 [103 Cal.Rptr. 498], a case discussing the effect of bad faith in releases obtained under Code of Civil Procedure section 877 on remaining defendants' right to contribution. It directs the court's attention to footnote 10 on page 1000:

"Although California has not adopted the Uniform Contribution Among Tortfeasors Act, Code of Civil Procedure section 877...is obviously modeled upon the 1955 version of the uniform act's section 4 ....Several courts have recognized that section 4 completely abrogates the common law rule releasing all joint tortfeasors upon the release of one. (...*Hackett* v. *Hyson,* 72 R.I. 132 [48 A.2d 353,...]; ...cf. *Watson* v. *McEwen,* 225 Cal.App.2d 771....)"

Edison notes the court's apparent approval of the *Hackett (supra)* case and sees in the "cf." an indication that it is time for the "satisfaction rule" to follow the release rule. The enforcement section, section 3, of the act is more pertinent, perhaps, to this discussion in that it discusses the effect of a satisfaction of judgment. The commissioner's comment states: "Subsection (e). Judgment Against One Tortfeasor. This was Section 3 of the 1939 Act. It simply states the well established rule that the injured party in obtaining judgment against one joint tortfeasor does not thereby discharge the others, *although there may, of course, be but one satisfaction of the claim."* (P. 90. Italics added.) Furthermore, the cases listed in the annotated version construe the section as saying that a satisfaction of judgment does discharge the other tortfeasors (§ 3, note 13). Research has failed to produce any California cases which support the new restatement view.

██ Edison sought to correct the unintended effect of a satisfaction of judgment (and assignment of interest). It obtained a vacation of the satisfaction of judgment and a substitution therefor of what the settling parties intended, i.e., a covenant not to sue. Undoubtedly, with respect to themselves, a judgment creditor and a judgment debtor are free to change a former agreement and enter into a new one which correctly expresses their initial intentions, and the courts have recognized that a satisfaction of judgment may be vacated for proper cause. However,

even the earliest cases recognized that the courts will vacate an entry of satisfaction "when the rights of third parties have not intervened" (*Becker Steel Co. of America* v. *Cummings* (S.D.N.Y. 1936) 16 F.Supp. 601, 604). By implication, then, when the rights of third parties have intervened, the vacation of satisfaction should not be applied to defeat those third parties' rights.

What rights have intervened? We conceive of none. So long as Edison had an appeal pending, Harnischfeger had a potential indemnity obligation to Crane Hoist. The equitable power of the court to correct a document to express the true intentions of its signators having been exercised declaring the satisfaction of judgment void and the covenant not to sue assignment valid left Harnischfeger in the identical position it was in before the payment of judgment by Crane Hoist.

We do not decide whether Harnischfeger may not assert the doctrine of equitable estoppel below if indemnity is sought by Crane Hoist. What detrimental reliance Harnischfeger may show other than by the instant record we do not know; hence, if any exists, that should be raised in defense at a subsequent trial.

Motion to dismiss denied.

Ashby, J., and Hastings, J., concurred.

A petition for a rehearing was denied December 13, 1979.