[Civ. No. 57307. Second Dist., Div. Five. June 19, 1980.]

ARTHUR BUNZEL, Plaintiff and Appellant, v.
AMERICAN ACADEMY OF ORTHOPAEDIC SURGEONS,
Defendant and Respondent.

**Counsel**

Emanuel Gyler for Plaintiff and Appellant.

Musick, Peeler & Garrett, James B. Bertero, Marilyn B. O'Toole, Hinshaw, Culbertson, Moelmann, Hoban & Fuller and Thomas M. Crisham for Defendant and Respondent.

OPINION

**HASTINGS, J.**—Arthur Bunzel, appellant, was rejected for membership in the American Academy of Orthopaedic Surgeons (Academy or AAOS) and under the present action he sued the Academy for damages and for an order admitting him to membership. Academy moved for a summary judgment and it was granted on the ground that Academy controlled no vital professional privileges and certifications in the field of orthopaedic surgery. This appeal followed.

Appellant is a licensed physician practicing orthopaedic surgery and has been certified in this specialty by the American Board of Orthopaedic Surgery (ABOS). According to Academy, it is a society of orthopaedic surgeons whose sole purposes are educational and scientific. Academy does not certify the professional, ethical or educational competence of orthopaedic surgeons as this is done by ABOS. Orthopaedic surgeons are not eligible for Academy membership unless they have been board-certified. Membership in the Academy is an honor and as Academy states, not a sanction of specialized qualifications.

The activities of Academy related to orthopaedic surgery are open to members and nonmembers alike. These activities include presentation of scientific papers, educational courses and technical exhibits at Academy's annual meeting and at other times during the year. Attendance at and participation in these educational activities are open to all licensed physicians regardless of Academy membership.

Other activities will be detailed as required later in this opinion.

It is appellant's contention that Academy is a *Pinsker*-type organization (*Pinsker* v. *Pacific Coast Soc. of Orthodontists* (1969) 1 Cal.3d 160 [81 Cal.Rptr. 623, 460 P.2d 495], referred to as *Pinsker I* and *Pinsker* v. *Pacific Coast Society of Orthodontists* (1974) 12 Cal.3d 541 [116 Cal.Rptr. 245, 526 P.2d 253], referred to as *Pinsker II*). Dr. Pinsker, a dentist, was a member of the American Dental Association and was licensed to practice dentistry in California. He applied for membership in the American Association of Orthodontists (AAO). His application was denied. Membership in the AAO is apparently, if not absolutely essential, at least extremely helpful in obtaining certification by the American Board of Orthodontics (ABO). Membership may also be a prerequisite to attaining membership in certain foundations dedicated to special orthodontics techniques and being admitted to certain

advanced educational programs. Dr. Pinsker sued to enjoin the AAO from excluding him from membership in the organization. The Supreme Court in *Pinsker I* affirmed the trial court's injunction in his favor stating (p. 166): "Because of the unique position in the field of orthodontics occupied by defendant AAO and its constituent organizations, membership therein, although not economically necessary in the strict sense of the word...would appear to be a practical necessity for a dentist who wishes not only to make a good living as an orthodontist but also to realize maximum potential achievement and recognition in such specialty. Defendant associations hold themselves out to the public and the dental profession generally as the sole organizations recognized by the ADA, which is itself a virtual monopoly, to determine standards, both ethical and educational, for the practice and certification of orthodontics. Thus, a public interest is shown, and the associations must be viewed as having a fiduciary responsibility with respect to the acceptance or rejection of membership applications."

And in *Pinsker II, supra,* the court stated (p. 552): "In *Pinsker I* we concluded that although membership in defendant orthodontic associations could not be said to be 'an economic necessity,' the associations still wielded monopoly power and affected sufficiently significant economic and professional concerns so as to clothe the societies with a 'public interest.'"

Appellant contends that he presented to the trial court sufficient evidence to establish Academy's tie-in with ABOS and the American Medical Association (AMA) that demonstrated Academy's *unique position* in the field of orthopaedic surgery in that it wielded monopoly power and affected significant economic and professional concerns so as to clothe it with a public interest, as defined in *Pinsker I* and *Pinsker II.* Appellant insists that the trial court was incorrect in granting the summary judgment because at the very least he presented sufficient facts to permit the issue or issues raised by *Pinsker I, Pinsker II* and subsequent cases to go to the trier of fact.

The trial court concluded that Academy is not in a monopoly position, does not control access to the profession and does not control advancement in the profession. It further held there is no indication that Academy controls access to vital professional privileges and certifications and that it does not comport with the meaning of a "unique" position as used in the *Pinsker* cases.

## Discussion

■    Though often said, it appears necessary to again reiterate that a summary judgment is a drastic measure which deprives the losing party of trial on the merits. It therefore may not be invoked unless it is clear from the affidavits (or declarations) filed in connection with the motion that there are no triable issues of fact. (Code Civ. Proc., § 437c.) Doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. (*People* ex rel. *Riles* v. *Windsor University* (1977) 71 Cal.App.3d 326, 331 [139 Cal.Rptr. 378].)

■    In our present case Academy supported its motion for summary judgment with the affidavit of Dr. Charles V. Heck, the executive director of the organization. There are numerous and clear contradictions between his declarations concerning Academy activities and appellant's evidence as presented in his affidavits and declarations. In the two *Pinsker* cases our Supreme Court was concerned with the monopoly power wielded by the society and whether it effected significant economic and professional concerns, so as to clothe the society with a public interest. Appellant presented to the trial court evidence directly pointing to such power by Academy.[1]   ■    In examining the sufficiency of affidavits filed in connection with the motion, the affidavits of the

---

[1]The summary of the evidence is as follows: AAOS in its manual entitled "Medical Education as Related to Orthopaedic Surgery" reads: "For the first four years of its existence, the American Board of Orthopaedic Surgery permitted certification without examination. After incorporation on February 8, 1934, *with the aid of the Academy* (founded October 11, 1931, followed by the first annual meeting in 1933) and the American Medical Association, the new ABOS set standards and provided measuring devices to certify competence of the orthopaedist." (Italics added.)

AAOS nominates the ABOS Board members.

AAOS and ABOS have shared office space for at least 10 years until very recently.

AAOS includes members of the ABOS Board in its fringe benefit package.

The fellows of AAOS serve as examiners for the ABOS Board.

AAOS approves the residency programs necessary for certification by ABOS.

Official joint meetings between AAOS and ABOS are held on a regular basis.

Official joint committees of AAOS and ABOS function to define the competency for recertification and recertification by ABOS is contingent upon demonstrating competency in accord with standards developed by AAOS, educational courses provided by AAOS and self-assessment examinations developed by AAOS.

AMA recognizes AAOS as the spokesperson for the orthopaedist specialty. AAOS appoints two of its members to represent orthopaedists in AMA and these two appointees are the only two representatives for the specialty in the entire AMA organization.

AAOS equally participates and "controls access to vital professional privileges and certifications." The committee establishing residency education requirements is composed of three members from the AMA, three from ABOS and three from AAOS.

moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion. (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 20 [112 Cal.Rptr. 786, 520 P.2d 10].) ▆▆ Although Academy through its own affidavit denies that this evidence demonstrates it is a *Pinsker*-type organization, this is for a trier of fact to determine and not by the court that is considering a motion for summary judgment.

Academy argues that the *Pinsker* decisions are not controlling because Dr. Pinsker could not be certified by ABO unless he had been previously certified for membership in AAO, whereas appellant here was certified and ABOS not Academy certifies the orthopaedic surgeon. While this might be a factor to be considered by the trier of fact, it is not a sufficient distinction to justify the summary judgment. This is not one of the criteria relied upon by our Supreme Court in the two *Pinsker* decisions. The basic criteria have been set forth above. Academy has made a very spirited and impressive argument on why it is not a *Pinsker*-type organization. It has cited numerous cases to support its position. These arguments and citations however are directed to the merits of the case and could very well resolve the lawsuit in its favor in a jury trial and again they may not. Clearly it cannot be said that as a matter of law it is entitled to a judgment. On this appeal we are only concerned with the propriety of the summary judgment and for the reasons stated above have concluded it should not have been granted. It is therefore unnecessary that we analyze and respond to various other arguments made by both parties. They merely add additional support to the fact that appellant has demonstrated that triable issues of fact exist and further discourse on our part would only be redundant.

The summary judgment in favor of defendant is reversed.

Kaus, P. J., and Stephens, J., concurred.

A petition for a rehearing was denied July 15, 1980, and respondent's petition for a hearing by the Supreme Court was denied August 13, 1980.