[Civ. No. 57853. Second Dist., Div. One. Aug. 29, 1980.]

JOS. SCHLITZ BREWING COMPANY, Plaintiff,
Cross-defendant and Respondent, v.
DOWNEY DISTRIBUTOR, Defendant, Cross-complainant and
Appellant;
LUCILLE C. GOVERNALE, Individually and as Executrix, etc.,
Defendant and Appellant.

910

**COUNSEL**

Wylie A. Aitken and Garrett S. Gregor for Defendant, Cross-complainant and Appellant and for Defendant and Appellant.

Alan R. Talt, J. E. Simpson and Lawrence Drumm for Plaintiff, Cross-defendant and Respondent.

**OPINION**

TITLE, J.*—Appellants Downey Distributor, a corporation, defendant and cross-complainant and Lucille C. Governale, individually and as executrix of the last will and estate of L. Gerome Governale, deceased, defendant in this action, appeal from a summary judgment entered against them on the complaint and cross-complaint herein in favor of Jos. Schlitz Brewing Company, plaintiff and cross-defendant.

*Assigned by the Chairperson of the Judicial Council.

## FACTUAL BACKGROUND

Jos. Schlitz Brewing Company (Schlitz) is a manufacturer of beer. Downey Distributor (Downey) was a corporation engaged as a wholesale beer distributor in which the sole stockholders were the Governales. In August 1962, a written agreement was entered into between Schlitz and Downey entitled "Declaration of Terms," which set forth various terms and conditions under which Downey would purchase beer from Schlitz for distribution to retail outlets. The agreement provided that either party could terminate at any time without cause and without notice. It further provided that Schlitz was granting no franchise or exclusive territory to Downey and that Schlitz could sell its products to others in the same trade area in which Downey might sell such products. In February 1973, a supplement to the agreement was executed by the parties to comply with a new California statute, which supplement specified a territory in which Schlitz products could be distributed by Downey, but specifically provided that it did not give an exclusive right to Downey to sell in the described territory, the territory being in the Downey area of Los Angeles County.

Schlitz and Downey continued to do business together from 1962 to April 1974. During this time several guaranties were executed by Mr. and Mrs. Governale in favor of Schlitz, the last of such guaranties allegedly being executed by them in August 1970, in the amount of $500,000. From time to time during the relationship, Downey was frequently unable to pay its account to Schlitz. Its financial problems continued to grow, and at least by late 1973 or early 1974, Downey's bank reduced its line of credit and it was unable to continue to purchase products from other beer and liquor companies from whom it also purchased inventory for resale. In March 1974, Downey gave Schlitz a check for $13,561.60, which was returned for insufficient funds. This was not the first time that Downey had given an N.S.F. check to Schlitz. At that time Schlitz informed Downey that it would have to make the check good and bring its account current before any new shipments were made to it. However, between that time and April 15, 1974, Downey made only some $1,200 of the check good, and its indebtedness to Schlitz at that time was in excess of $120,000. Schlitz had been demanding audited financial statements from Downey for some time without success, the last demand being in a letter of March 5, 1974, in which Schlitz advised Downey that if it failed to provide the audited financial statements by November 15, 1974, Schlitz would withdraw its open account credit accommodations from Downey.

Downey's financial condition continued to deteriorate in March and April 1974, during which time Mr. Governale was attempting to find a purchaser for the Downey business. Discussions were had by Mr. Governale with several other Schlitz' distributors in an effort to sell the Downey business to them, but no sale ever materialized. On April 11, 1974, Schlitz notified Downey by registered mail that it was terminating their buyer/seller relationship effective April 15, 1974, because of the financial condition of Downey which made it necessary for Schlitz to revoke their credit arrangements and to stop shipments to Downey. Downey closed its doors on April 12, 1974. Schlitz then arranged for three of its adjacent wholesale distributors to service the Downey customers with Schlitz beer. Arrangements were made for the three distributors to each pay one third of the Downey indebtedness to Schlitz, while Schlitz retained the right to collect the same and to credit such collections to said distributors.

Mr. Governale died shortly thereafter, and this action was filed by Schlitz against Downey for the open account balance in the sum of $121,415.76. Mrs. Governale and the estate of Mr. Governale were joined as defendants on the basis of the guaranty mentioned above. Downey cross-complained against Schlitz and others for breach of contract, interference with a business advantage, fraud, and conspiracy. Schlitz moved for a summary judgment on its complaint as well as the cross-complaint, and defendants and cross-complainant also moved for summary judgment. The trial court denied defendants' and cross-complainant's motion for summary judgment and instead granted Schlitz' motion for summary judgment. Judgment was entered in favor of Schlitz in the sum of $121,415.76 with interest of $42,070.56 as well as attorneys' fees in the sum of $25,000. This appeal by Downey and Mrs. Governale followed.

## ISSUE

Are there any triable issues of fact remaining in the action as to Downey's causes of action on its cross-complaint against Schlitz?

## RESOLUTION OF ISSUES

### I

Section 437c of the Code of Civil Procedure provides that a motion for summary judgment "...shall be granted if all the papers submitted

show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

■ "The matter to be determined by the trial court on a motion for summary judgment is whether facts have been presented which give rise to a triable factual issue. The court may not pass upon the issue itself. Summary judgment is proper only if the affidavits in support of the moving party would be sufficient to sustain the judgment in his favor and his opponent does not by affidavit show facts sufficient to present a triable issue of fact. The affidavits of the moving party are strictly construed and those of his opponent liberally construed, and the doubts as to the propriety of summary judgment should be resolved against granting the motion." (*Slobojan* v. *Western Travelers Life Ins. Co.* (1969) 70 Cal.2d 432, 436-437 [74 Cal.Rptr. 895, 450 P.2d 271].)

"On a motion for summary judgment, if a single issue of fact is found, the trial court is powerless to proceed and must allow such issue to be tried." (*Lynch* v. *Spilman* (1967) 67 Cal.2d 251, 271 [62 Cal.Rptr. 12, 431 P.2d 636]. See also *Weaver* v. *Superior Court* (1979) 95 Cal.App.3d 166 [156 Cal.Rptr. 745]; *Walsh* v. *Walsh* (1941) 18 Cal.2d 439 [116 P.2d 62].)

## II

With the above rules in mind, we examine the declarations filed by the parties in support of as well as in opposition to the Schlitz motion for summary judgment. It should be noted preliminarily that while Downey's cross-complaint contains a number of causes of action based upon various legal theories such as breach of the written agreements, breach of oral argreements, fraud, negligent misrepresentation, wrongful interference with a business advantage or relationship and conspiracy, all of the causes of action have a common thread consisting of the same factual allegations. The gist of these allegations is that over the 19 years of the business relationship between Schlitz and Downey, they arrived at an oral agreement to the effect that Downey had the right to be the wholesale distributor in the Downey area; that this was an assignable right which Downey could sell to a third party for a consideration if the third party was approved by Schlitz; that it was so represented to Downey by authorized personnel of Schlitz; that in addition to such specific oral agreement, there existed an implied covenant that Schlitz would deal with Downey in good faith in carrying out this understanding; that in violation of such oral agreement and representa-

tions and the implied convenant to deal with Downey in good faith, Schlitz terminated these rights of Downey at a time when Downey had received an oral offer from one Michaels to purchase Downey's distributorship; that at the time of such termination, Schlitz knew of the offer from Michaels and terminated Downey's rights with the intention to deprive Downey of the consideration which would be received for said distributorship and instead transferred such distributorship to three other distributors of Schlitz, all to the substantial damage of Downey.

Many of the material facts in the dispute between the parties are set forth in the declarations filed by Schlitz in support of its motion and are uncontroverted. These uncontroverted facts include the long relationship between the parties which began in 1962 with the execution of the declaration of terms; the execution of the supplement thereto in 1972; that Downey ran out of money in early 1974, was unable to service its customers and had its bank credit lines substantially reduced; that N.S.F. checks were issued by Downey to Schlitz, including the check in the sum of $13,561.80 of March 7, 1974, which remained substantially unpaid along with an additional unpaid balance exceeding $100,000 at the time of the termination notice from Schlitz to Downey; that Downey was insolvent at the time of the termination; that Downey did not respond to demands by Schlitz for audited financial information; that the written declaration of terms provided that either party could terminate the agreement at any time, without cause and without notice; and that Schlitz terminated the relationship in writing on April 11, 1974, effective April 15, 1974; that prior thereto Downey had lost suppliers other than Schlitz because of its inability to meet its financial requirements; and that Downey closed its doors on April 12, 1974.

In opposition to the motion of Schlitz for summary judgment, Downey filed declarations of Attorneys Joseph A. Walker and Robert E. Callahan for the purpose of laying the foundation for the use of some deposition testimony of employees of Schlitz. In addition, Downey filed the declaration of one of its attorneys, Edgar E. Scheck, which stated that declarant was told in early 1974 by Mr. Governale, president of Downey, that he was dying and wished to sell the distributorship, of which Schlitz beer was a major line; that pursuant thereto Governale and Scheck commenced discussions with several people regarding the possible sale of the distributorship; that in addition, Governale and Scheck discussed the sale of the beer distributorship with Panagos, Engle, and Timpone, employees of Schlitz, each of whom informed Governale and Scheck that Downey's rights to wholesale the products

of Schlitz in the Downey area was salable and transferable by Downey; that based on such representations Governale and Scheck continued to attempt to negotiate a sale to various entities and persons, including the wholesaler of Schlitz' product in the Riverside area, one John Michaels; that in March or April 1974, an oral offer was received from Michaels to purchase Downey's right to wholesale Schlitz' products in the Downey area; that the offer provided for the payment to Downey of $250,000 in cash over a period of time, with the prospective purchaser to also assume $600,000 of Downey's liabilities; Downey was in turn to grant to Michaels the right to be the wholesale distributor of Schlitz' products in the Downey area and was also to transfer to Michaels all of the physical assets of the business; that Governale and Scheck informed said Schlitz' employees of all such negotiations with various entities and persons, including the negotiations with and the oral offer from Michaels, and were advised by said employees that Schlitz would acquiesce in a sale of Downey's wholesale distributorship to a party approved by Schlitz; that before the sale could be finalized, Schlitz notified Downey by letter that Schlitz intended to take back Downey's distribution rights without compensation and that such distribution rights would be given by Schlitz to other Schlitz distributors; and that by reason thereof, the negotiations with Michaels were terminated, Downey was unable to conclude its sale of the distributorship, as a result thereof Downey lost the sum of $850,000.

### III

■ The issue to be determined by the trial court in ruling upon Schlitz' motion for summary judgment is whether or not Downey has presented any facts which give rise to a triable issue or defense, and not to pass upon or determine the issue itself, that is, the true facts in the case. (*Eagle Oil & Ref. Co.* v. *Prentice* (1942) 19 Cal.2d 553 [122 P.2d 264].) The court in that case further stated at page 556: "The procedure is drastic and should be used with caution in order that it may not become a substitute for existing methods in the determination of issues of fact.... [¶] For these reasons it may further be said that the affidavits of the moving party, the plaintiff in this case, should be strictly construed and those of his opponent liberally construed. [Citations.] And in this connection it may be further observed that the better rule is that the facts alleged in the affidavits of the party against whom the motion is made must be accepted as true, and that such affidavits to be sufficient need not necessarily be composed wholly of strictly evidentiary facts. [Citation.]"

Assuming for the purposes of the motion for summary judgment that the facts in the Scheck declaration are true, if such facts would constitute a cause of action against Schlitz and thus entitle Downey to make an affirmative recovery against Schlitz or at least diminish any recovery by Schlitz on its complaint, a factual dispute exists which would entitle Downey to go to trial on the issues. Bearing in mind the rule that the affidavits of the moving party in the summary judgment proceedings are strictly construed and those of the opponent are liberally construed, the facts alleged by the Scheck declaration vis-à-vis the declarations filed by Schlitz contain the germ of a potential cause of action against Schlitz, depending of course upon what additional facts and inferences are developed at the time of trial. The potential cause of action with which we are concerned is a cause of action for the intentional interference with prospective business or economic advantage. It involves the existence of a business advantage or relationship, not necessarily one which is already matured into a binding contract, with the probability of future economic benefit to Downey, knowledge on the part of Schlitz of the relationship or advantage, intentional acts by Schlitz calculated to destroy or disrupt the relationship, actual disruption or destruction thereof and damage to Downey as a result of such conduct. The tort has been applied in many fields and has long been recognized by many courts, including those of California. (*Buckaloo* v. *Johnson* (1975) 14 Cal.3d 815 [122 Cal.Rptr. 745, 537 P.2d 865]; *Buxbom* v. *Smith* (1944) 23 Cal.2d 535 [145 P.2d 305]; *Cal. Bev. etc. Co.* v. *Distillers Distrib. Corp.* (1958) 158 Cal.App.2d 758 [323 P.2d 517]; *Lowell* v. *Mother's Cake & Cookie Co.* (1978) 79 Cal.App.3d 13 [144 Cal.Rptr. 664].)

## IV

Based upon the declarations referred to above and the state of the law regarding the tort of intentional interference with prospective business or economic advantage, it is apparent that various factual issues are present and must be resolved at trial. These include the issues as to whether or not a business or economic advantage existed as a result of the alleged oral offer by Michaels to Downey or as a result of the state of the negotiations between them; whether Schlitz employees had knowledge thereof; and whether there existed a motivation on the part of Schlitz to intentionally interfere with that relationship so as to gain an advantage for itself.

## V

■ Completely aside from the issues relating to the alleged commission of the tort of intentional interference with a business or economic advantage, it is also clear that additional triable issues remain as to other aspects of Downey's cross-complaint. While Schlitz' declarations negate the existence of any oral agreements regarding the salability of the Downey distributorship, the Scheck declaration nevertheless contains statements from which the contrary can at least be inferred. Prior to the 1973 amendment to Code of Civil Procedure section 437c, the question as to whether or not a summary judgment was proper where inferences could be drawn from the evidence was uncertain. (See Zack, *California Summary Judgment* (1971) 59 Cal.L.Rev. 439, 453; David, *The Summary Judgment in California: The Case for Judicial Reform* (1973) 25 Hastings L.J. 119, 138; also see article on the 1973 Summary Judgment Act by Ernest J. Zack, 48 State Bar J. 654.) Code of Civil Procedure section 437c, as amended in 1973, now provides in part as follows: "... In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the admissible evidence set forth in the papers and all inferences reasonably deducible from such evidence, *except summary judgment shall not be granted by the court based on inferences reasonably deducible from such evidence, if contradicted by other inferences or evidence*, which raise a triable issue as to any material fact." (Italics added.)

Pursuant to this language it is now apparent that while the court has the power to order a summary judgment even though inferences must be drawn to support the judgment, the summary judgment should be denied if such inferences are contradicted by other inferences demonstrated by the opposing party which raised a triable issue as to any material fact. Since such inferences may be drawn here by virtue of the Scheck declaration, a triable issue remains as to the existence of an oral agreement as well as the issue as to whether or not said oral agreement has been breached.

## VI

■ With reference to the question as to whether or not a triable factual issue remains as to Downey's claim of fraud and conspiracy, while Schlitz has to some degree negated the existence of a conspiracy or fraud in its declarations, including those of Davis and Hommes, there is nevertheless a possible inference of fraud and conspiracy to be gleaned

from some of the allegations in the Scheck declaration, i.e., that after allegedly representing to Downey that its distributorship was salable and transferable, Schlitz nevertheless terminated the rights of Downey after learning of Downey's negotiations with Michaels and the receipt of an offer of purchase from Michaels, thus effectively eliminating Downey's right to receive the consideration from such sale. While somewhat weak, in view of the above quoted provision of Code of Civil Procedure section 437c, dealing with inferences as well as the well recognized rule that the declarations of the moving party in summary judgment proceedings must be strictly construed and those of the opposition liberally construed, we conclude that triable issues of material facts remain as to the claim of fraud and conspiracy.

## VII

Appellants also contend that in addition to the triable issues of fact mentioned above, there are further triable issues of fact in the case relating to the alleged execution of the guaranty by Mrs. Governale as well as the legal effect of that guaranty. However, in view of the fact that we have now determined the existence of numerous triable issues, irrespective of such contention relating to the guaranty, we need not determine whether any triable issues remain as to the guaranty or its legal effect.

The judgment is reversed.

Lillie, Acting P. J., and Hanson (Thaxton), J., concurred.

A petition for a rehearing was denied September 23, 1980, and respondent's petition for a hearing by the Supreme Court was denied October 29, 1980.