[Civ. No. 55535. Second Dist., Div. Five. June 24, 1981.]

SOUTHERN CALIFORNIA EDISON COMPANY, Plaintiff and Appellant, v.
HARNISCHFEGER CORPORATION, Defendant and Respondent.

COUNSEL

Schell & Delamer, Mark B. Pepys and Arthur E. Schwimmer for Plaintiff and Appellant.

Spray, Gould & Bowers, Charles A. Bennett and Barry Bartholomew for Defendant and Respondent.

OPINION

**STEPHENS, Acting P. J.**—Plaintiff and appellant, Southern California Edison Company (Edison), seeks reversal of a summary judgment in a products liability action entered in favor of defendant and respondent, Harnischfeger Corporation (Harnischfeger). This appeal focuses on Edison's underlying suit for damages resulting from an accident which occurred at its El Segundo generating plant on March 1, 1972.[1] Plaintiff's complaint included causes of action against Harnischfeger for strict products liability, negligence, and breach of implied warranties relating to a crane built by this defendant for Edison. The question on appeal is whether these allegations present triable issues of fact.

---

[1]Summary judgment was entered for Harnischfeger on January 25, 1978 (SW C 27524). Edison appealed the trial court's order, and Harnischfeger made a motion be-

The parties stipulated to the facts surrounding the industrial mishap on defendant's motion for summary judgment below. Harnischfeger contracted to build a gantry crane for Edison nine years prior to the accident underlying this litigation. The crane was constructed for use at Edison's generating station in El Segundo. On March 1, 1972, the load cable on the gantry crane broke, and a turbine rotor, weighing over 90 tons, dropped into a steam turbine below.

The wire rope load line broke at a point where it passes over the crane's equalizer sheave (pulley). The cable and equalizer sheave are "non-moving" parts at their interface. The stationary status of this load line may have caused severe bending stresses in the groove and the tangential areas where the wire rope and sheave met.

Evidence of wire abrasion or deterioration could not be readily detected in this situation. Not only were the load line and equalizer sheave stationary, but the parties agree that the point at which the cable passed over this particular pulley was "essentially hidden from view during normal operations of the crane." The metal plates of the crane's trolley deck prevented either a visual inspection of the interface or physical access for lubrication.

Edison and Harnischfeger agree that corrosion weakened the cable and caused its break. The corrosion likely occurred in the area where the load line meets the equalizer sheave. The crane's operation in a "salt-laden atmosphere" at El Segundo, together with the absence of a lubricant, was a probable catalyst for the wire deterioration.

Edison alleges that Harnischfeger is strictly liable for the physical injuries to its property and economic losses resulting from the crane accident. Plaintiff asserts that defendant's defective design of the crane caused the cable to break. The location of the equalizer sheave underneath the trolley deck's metal plates made the load cable inaccessible at

fore this court to dismiss the appeal. We denied Harnischfeger's dismissal motion. (*Southern California Edison Co.* vs. *Harnischfeger Corp.* (1979) 99 Cal.App.3d 9, 16 [160 Cal.Rptr. 23].)

Any argument by respondent that this appeal is "moot" was clearly dispatched by our previous decision. No further discussion of that contention is warranted here. Our earlier opinion provides a procedural background to the present controversy.

We particularly note two aspects of the prior opinion. Following the summary judgment for Harnischfeger, the case concerning the industrial accident herein went to trial against the remaining defendants. A jury found total liability against them, and no negligence on the part of Edison. (*Id.* at p. 12.)

that point. In its opposition to Harnischfeger's motion for summary judgment, Edison incorporates an engineering expert's declaration to argue that, at a minimum, the metal plate above the equalizer sheave should have been removable.[2] Plaintiff contends that a removable plate would have allowed for the inspection of the cable at its interface with the sheave. According to Edison, such an inspection would have prompted the replacement of the corroded cable and prevented the accident.

Edison also alleges that a design defect is clearly indicated by Harnischfeger's failure to comply with the performance specifications for the crane. In opposing defendant's motion below, Edison attached the declaration of Max Schwartz, a registered professional in mechanical and civil engineering. Schwartz states that the interface between the cable and equalizer sheave was not only hidden from view, but no walkway or ladder was provided for access to this point. The structural omission violates a contract specification which directs Harnischfeger to provide walkways or ladders "for safe access to all parts requiring lubrication or maintenance."

An expert declarant described two additional contract specifications allegedly violated by defendant. Edison cites these purported infractions as further evidence of a design defect in the crane. A performance provision directed that "[i]naccessible parts requiring lubrication shall be piped to a location at the walkway convenient to the operator." The point at which the load cable passed over the equalizer sheave was admittedly inaccessible, but Harnischfeger made no provision for piping lubrication to this location.

The specifications admonish defendant that "[l]iberal factors of safety conforming to recognized good practice shall be used throughout the design." In light of the "salt-laden atmosphere" at plaintiff's El Segundo facility, an expert declarant states that a "stainless steel" cable should have been used for outdoor service. Plaintiff's expert contends a stainless steel cable would have resisted corrosion and rust, unlike defendant's "improved plow steel" cable which succumbed to deterioration.

---

[2] Edison expressly adopted the declaration of Paul Reinhardt, a mechanical engineer, in its opposition papers. The expert's statement is attached to an opposition to Harnischfeger's motion for summary judgment by another defendant in the underlying action, Crane Hoist Engineering and Parts Co., Inc.

Edison also alleges Harnischfeger's "failure to warn" as a basis for strict products liability. Defendant submitted a "Care and Operation Manual" to plaintiff, but the instruction booklet contained no admonition regarding the dangers inherent to this crane's load cable. The parties' expert affiants all recognize the authority of a leading handbook on wire ropes.[3] This instructional handbook describes the dangerous condition created by even a "slight movement" of the load cable over the equalizer sheave. Despite the conceded risk of wire deterioration and broken cables, defendant neither included a corresponding caveat in its operations manual, nor did it provide the aforementioned authority with the crane.

Defendant's manual does not indicate the physical impossibility of gaining access to the interface between the cable and sheave. Moreover, the operations guide does not indicate "physical removal" as a method for inspecting and lubricating the portion of the load cable which passes over the equalizer sheave.[4] Edison's expert declarant states that an appropriate warning, describing the removal procedure for accessibility, should have been posted on the crane, or at least written into the operations manual. Finally, plaintiff alleges that defendant's "Replacement Parts Manual" fails to warn of the need to change the load cable periodically. Edison argues that such an admonition would have prevented a cable break.

Plaintiff argues that a safer, alternative design was available to defendant. Furthermore, Edison asserts that Harnischfeger breached its duty to warn of the risks inherent in the crane's design. Edison's experts declare that Harnischfeger's engineering fell below the professional standard existing at the time of the crane's manufacture. Accordingly, plaintiff included a cause of action for negligent design and manufacture against Harnischfeger. Because defendant knew the particular purpose for which this gantry crane was intended, and plaintiff allegedly relied upon defendant's design skills and judgment, Edison charged Harnischfeger with breaching the implied warranties of merchantability and fitness for a particular purpose.

The thrust of Harnischfeger's motion for summary judgment is that neither an alleged design defect nor a purported failure to warn was the

---

[3]Roebling "Wire Rope Handbook."

[4]The load cable must be removed from the equalizer sheave and pulled down to the ground for inspection and lubrication.

proximate cause of the crane accident here. Respondent argues that "the only cause" of this industrial mishap was the negligence of Crane Hoist Engineering and Parts Company, Inc. (Crane Hoist). Crane Hoist was contracted by Edison to inspect and maintain the gantry crane involved in the case at bar. Harnischfeger alleges that but for Crane Hoist's failure to properly perform the maintenance on the load cable, the turbine rotor never would have dropped.[5]

Respondent relates that the load cable could be inspected and lubricated by either of two procedures. The cable may be completely removed from the crane; or, slack may be set into the load line, and the "loosened" line is then pulled to the ground. More importantly, evidence in this case shows that the Crane Hoist employees assigned to Edison's crane knew of both inspection methods. However, the employees did not consider the "removal" option, and admittedly lacked the necessary equipment to "slacken" the line at the inspection which preceded the accident.

Harnischfeger argues that warnings on the maintenance methods, periodic replacement of the load cable or its "accessibility" for lubrication were not necessary and would not have prevented the accident here. Respondent contends that since the Crane Hoist employees were aware of the proper approach under these circumstances, it was their negligence in failing to inspect the load line which caused the cable break, and not the absence of a warning. Edison counters this contention, arguing that an appropriate admonition would have insured its close oversight of Crane Hoist's inspection and guaranteed proper maintenance of the load cable.

Harnischfeger also asserts that strict liability cannot be premised upon any design defect in this case. According to respondent, the mere fact that the cable could not be visually inspected at its interface with the equalizer sheave does not indicate that the crane was defectively designed. Removing or "slackening" the load line may be difficult and time-consuming, but respondent argues that these "physical" procedures afford complete maintenance for the cable and were known by the Crane Hoist personnel.

---

[5]In *Southern California Edison Co.* v. *Harnischfeger Corp., supra*, 99 Cal.App.3d 9, we note a judgment rendered against Crane Hoist in the underlying trial, and recognize a subsequent covenant not to sue/assignment between that entity and Edison which "not only gave Crane Hoist the right to proceed with the appeal from the summary judgment (in the name of Edison) but, if successful then, to seek indemnification. [Fn. omitted.]" (*Id.* at pp. 13-14: see fn. 1, *ante.*)

Harnischfeger declares that specifications submitted by Edison and Bechtel Corporation (Bechtel), appellant's engineering consultant, expressly required the plow steel cable provided by respondent. Moreover, an expert deponent testified that a stainless steel cable would be of "no advantage" to the crane in this case.[6] Therefore, respondent contends that the use of a plow steel cable in this instance does not constitute a design defect.

Edison responds that the preceding arguments are specious at best. First, appellant stresses that a "removable inspection plate" above the equalizer sheave is a safer, more reasonable alternative design to the complicated, cumbersome procedures which Harnischfeger invokes. Second, appellant points to an expert's declaration that the "salt-laden atmosphere" required Harnischfeger to exercise design discretion and equip the crane with a stainless steel cable. According to appellant, stainless steel would have resisted the corrosion which caused the plow steel cable to break. Finally, declarations of an independent mechanical engineer, Edison's project engineer, and Bechtel's chief civil engineer state that Edison submitted only "standardized, performance specifications" for its El Segundo crane.[7] The crane could not be constructed from these "functional" guidelines, as the design specifications for manufacture were Harnischfeger's responsibility.

Respondent argues that the doctrine of strict products liability cannot be applied here since Edison is not a "typical consumer." Harnischfeger alleges that Edison purchased the subject crane in a commercial setting, dealing from a position of relatively equal economic strength. Furthermore, respondent contends that Edison's submission of specifications indicates that the public utility bargained for the crane's design. On appeal Harnischfeger asserts the purported limitations of the warranty provision appearing in the specifications.[8] Respondent argues that not only was the liability period limited to 18 months from the date of the crane's delivery (the cable break here occurred 9 years after delivery), but the warranty clause expressly disclaimed all "other" implied warranties.

Edison emphasizes that only performance guidelines were forwarded to Harnischfeger. Appellant insists that it neither bargained for the

---

[6]Gurden Butler, an expert metallurgist, was retained as a consultant by Edison.

[7]Max Schwartz, Robert Coffey, and R. H. Weight.

[8]In its motion for summary judgment, Harnischfeger argues that no implied warranty was breached because the crane was not defective.

crane's design, nor did it negotiate the risk of loss from the cable break. Edison directs attention to the trial court's determination that the crane's price did not reflect a shift in risk to Edison, and appellant argues that the relevant implied warranties were not waived.

The procedural requirements which are dispositive to this appeal appear in Code of Civil Procedure, section 437c.[9] The statutory guidelines for denying a summary judgment are reflected in Edison's opposition to Harnischfeger's motion below. Plaintiff's papers presented a series of issues which could not be summarily resolved by the trial court as matters of law. Edison's expert declarations demonstrate triable issues of material fact regarding the alleged existence of a design defect in the crane, Harnischfeger's purported failures to warn of risks inherent to the equalizer sheave-cable arrangement, the relative bargaining position of the parties, and causation factors underlying the cable break on March 1, 1972.

■ "The matter to be determined by the trial court on a motion for summary judgment is whether facts have been presented which give rise to a triable factual issue. The court may not pass upon the issue itself. Summary judgment is proper only if the affidavits in support of the moving party would be sufficient to sustain a judgment in his favor and his opponent does not by affidavit show facts sufficient to present a triable issue of fact. The affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of summary judgment should be resolved against granting the motion." (*Slobojan* v. *Western Travelers Life Ins. Co.* (1969) 70 Cal.2d 432, 436-437 [74 Cal.Rptr. 895, 450 P.2d 271].)

"On a motion for summary judgment, if a single issue of fact is found, the trial court is powerless to proceed and must allow such issue

---

[9]Code of Civil Procedure, section 437c, provides in relevant part: "Any party may move for summary judgment in any action or proceeding if it is contended that the action has no merit .... [¶] The motion shall be supported or opposed by affidavits, declarations, ... answers to interrogatories, depositions and matters of which judicial notice shall or may be taken.... [¶] Such motion shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the evidence set forth in the papers, ... and all inferences reasonably deducible from such evidence, except summary judgment shall not be granted by the court based on inferences reasonably deducible from such evidence, if contradicted by other inferences or evidence, which raise a triable issue as to any material fact."

to be tried. [Citation.]" (*Lynch v. Spilman* (1967) 67 Cal.2d 251, 271 [62 Cal.Rptr. 12, 431 P.2d 636].) ▇ Edison presented facts raising issues of strict products liability and negligence which should be submitted to a jury. Harnischfeger alleges that the crane accident was caused by Crane Hoist's negligence, and not by any design defect or failure to warn. These assertions are contradicted by Edison's evidence. Since material factual questions exist as to strict products liability and Harnischfeger's purported negligence in designing this gantry crane, the summary judgment is reversed as to those causes of action. (*Jos. Schlitz Brewing Co. v. Downey Distributor* (1980) 109 Cal.App.3d 908, 918 [167 Cal.Rptr. 510].)

Harnischfeger has cited numerous cases to support its position. "These arguments and citations however are directed to the merits of the case and could very well resolve the lawsuit in its favor in a jury trial and again they may not. Clearly it cannot be said that as a matter of law it is entitled to a judgment. On this appeal we are only concerned with the propriety of the summary judgment ...." (*Bunzel v. American Academy of Orthopaedic Surgeons* (1980) 107 Cal.App.3d 165, 170 [165 Cal.Rptr. 433].) Since a basis appears for Edison's action in strict liability and negligence, Harnischfeger cannot "demonstrate that under no hypothesis is there a material factual issue which requires the process of a trial." (*Frazier, Dame, Doherty, Parrish & Hanawalt v. Boccardo, Blum, Lull, Niland, Teerlink & Bell* (1977) 70 Cal.App.3d 331, 339 [138 Cal.Rptr. 670]; *General Electric Credit Corp. v. Bo-Mar Constr. Co.* (1977) 72 Cal.App.3d 887, 892 [140 Cal.Rptr. 417]; *Fosgate v. Gonzales* (1980) 107 Cal.App.3d 951, 955 [166 Cal.Rptr. 233].) Under the circumstances presented, it was error for the trial court to enter summary judgment on the two causes of action.

Plaintiff may establish the elements of defect and proximate cause by circumstantial evidence. (*Diamond v. Caterpillar Tractor Co.* (1976) 65 Cal.App.3d 173, 177 [134 Cal.Rptr. 895].) It is clear that Edison satisfied this threshold requirement. Plaintiff submitted an expert declaration stating that a "removable inspection plate" above the equalizer sheave was not only a safer, more reasonable alternative design, but also that the crane's existing design was at least a contributing cause to the accident here. Edison's experts contend that design defects, which may have caused the cable break, are evidenced both by Harnischfeger's failure to comply with various performance specifications, and the use of a plow steel cable over a stainless steel load line. Plaintiff's

opposition papers also asserted that an appropriate warning as to the cable's inherent risks would have prevented the accident.

Harnischfeger attempts to discount these arguments through two contentions concerning causation. First, respondent alleges that Crane Hoist's negligence was the "only cause" of the accident. Then Harnischfeger indicates that the specifications provided Edison with the right of inspection before accepting the crane. Respondent argues that a reasonably prudent examination by the appellant would have revealed any alleged design defect before the crane began operation. In light of the "hidden" nature of this purported defect, respondent's latter argument is a bald assertion for purposes of affirming a summary judgment. More importantly, both contentions raise questions of causation which should be submitted for a jury's consideration.

Edison's evidence demonstrates that strict products liability and negligence both present proximate cause as a question of fact for the jury in this case. (*Hoyem* v. *Manhattan Beach City Sch. Dist.* (1978) 22 Cal.3d 508, 520, 522 [150 Cal.Rptr. 1, 585 P.2d 851].) Furthermore, Harnischfeger's attempted characterization of Crane Hoist's maintenance for the crane as an "intervening" or "superseding cause" of the cable break is also a material fact question for a jury. Such an assessment by the trier of fact necessarily involves a determination whether any alleged design defect was "a substantial factor" in the accident. (*Stevens* v. *Parke, Davis & Co.* (1973) 9 Cal.3d 51, 69 [107 Cal.Rptr. 45, 507 P.2d 653, 94 A.L.R.3d 1059].) This determination, in turn, requires a jury to decide whether Crane Hoist's alleged negligence was "reasonably foreseeable" to Harnischfeger. (*Ibid.*; *Hoyem, supra,* 22 Cal.3d 508, 521.)

The conflicting contentions of the parties raise significant factual issues as to Crane Hoist's role in the cable break. "If there is room for reasonable men to differ as to whether the intervening act was reasonably foreseeable, then the question is properly left to the jury. [Citations.]" (*Stevens, supra,* 9 Cal.3d at p. 69.) The preceding analysis may also be applied to Edison's purported failure to inspect the crane and discover any alleged defect prior to its operation. ■ "The basic question is whether the court should pass on superseding cause as matter of law or the jury should do so as matter of fact. From our reading of the cases we conclude that the extent to which designers and manufacturers of dangerous machinery are required to anticipate safety

neglect presents an issue of fact.' (*Balido* v. *Improved Machinery, Inc.* (1972) 29 Cal.App.3d 633, 645 [105 Cal.Rptr. 890].)

Even allowing for respondent's arguments as to Crane Hoist's maintenance and Edison's inspection, a jury should consider the factor of concurrent causes. ■ The doctrine of concurrent causation is applicable in strict products liability as well as in negligence. (*Thompson* v. *Package Machinery Co.* (1971) 22 Cal.App.3d 188, 193-195 [99 Cal. Rptr. 281].) Causation questions affect not only the negligence alleged in this case, but are also among the factors to be weighed by a jury in assessing strict products liability.

■ California decisions indicate "that a product may be found defective in design, even if it satisfies ordinary consumer expectations, if through hindsight the jury determines that the product's design embodies 'excessive preventable danger,' or, in other words, if the jury finds that the risk of danger inherent in the challenged design outweighs the benefits of such design. [Citations.]" (*Barker* v. *Lull Engineering Co.* (1978) 20 Cal.3d 413, 430 [143 Cal.Rptr. 225, 573 P.2d 443, 96 A.L.R.3d 1].) In the case at bar a jury must determine whether the benefits of Harnischfeger's crane design were exceeded by a preventable danger.

"A review of past cases indicates that in evaluating the adequacy of a product's design pursuant to this latter standard, a jury may consider, among other relevant factors, the gravity of the danger posed by the challenged design, the likelihood that such danger would occur, the mechanical feasibility of a safer alternative design, the financial cost of an improved design, and the adverse consequences to the product and to the consumer that would result from an alternative design. [Citations.]" (*Id.* at p. 431.)

In *Cavers* v. *Cushman Motor Sales, Inc.* (1979) 95 Cal.App.3d 338, 347 [157 Cal.Rptr. 142], the court decided that "the foregoing principles" were "adaptable to a failure to warn case." ■ In the context of a strict products liability action, the court declared: "In assisting the jury's determination of whether the absence of a warning makes a product defective, the trial court should focus their attention on such relevant considerations as the normal expectations of the consumer as to how the product will perform, degrees of simplicity or complication in the operation or use of the product, the nature and magnitude of the danger to which the user is exposed, the likelihood of injury, and the

feasibility and beneficial effect of including a warning. [Citations.]" (*Id.* at pp. 347-348.)

In applying the doctrine of strict products liability to this case, a jury must focus attention on the adequacy of the gantry crane and determine if, on balance, the design was not as safe as it should have been. (*Barker* v. *Lull Engineering Co., supra,* 20 Cal.3d 413, 432.) So far as the alleged failures to warn are concerned, the trier of fact must address the *Cavers* criteria, in light of appellant's allegations concerning the complicated procedures for inspecting and lubricating the load cable. Finally, Harnischfeger's purported negligence in designing the crane must be weighed by a jury against an array of causation questions.

Respondent argues that the doctrine of products liability does not apply here as a result of the decision in *Kaiser Steel Corp.* v. *Westinghouse Elec. Corp.* (1976) 55 Cal.App.3d 737, 748 [127 Cal.Rptr. 838]. ■ This court cannot accept that argument. While Edison purchased the gantry crane in a commercial setting, from a position of relatively equal economic strength with Harnischfeger, there are factual questions as to whether appellant bargained for the crane's design specifications with respondent. (*Ibid.*) Edison adamantly argues that it submitted only a standardized set of functional guidelines for the crane. Appellant's declarants assert that the crane could not be designed from these performance specifications, as design remained the responsibility of respondent.

Since at least one of the *Kaiser* criteria appears to be absent, strict products liability remains a question of fact to be resolved by a jury here. (*International Knights of Wine, Inc.* v. *Nave Pierson Winery, Inc.* (1980) 110 Cal.App.3d 1001, 1006 [168 Cal.Rptr. 301]; *Kaiser, supra,* 55 Cal.App.3d at p. 748.) All of the enumerated criteria in *Kaiser* must be present to preclude the application of products liability, because "strict liability in tort is intended to operate in favor of any person or entity, corporate or otherwise, having no significant bargaining power respecting the manufacturing process and which is thereby best calculated to be its victim. [Citation.]" (*International Knights of Wine, Inc.* v. *Nave Pierson Winery, Inc., supra,* at p. 1006 of 110 Cal.App.3d.)

■ Although Edison may not have bargained with Harnischfeger for the design of the crane, the "performance" specifications submitted by appellant contained an express warranty. The clause written into Edison's specifications limited Harnischfeger's liability for defects to 18

months from the date of the crane's delivery. In addition to the time constraint, the warranty provision expressly waived all "other" implied warranties, except for title to the crane's component parts. Respondent contends that Edison's own clause bars appellant's action on the implied warranties of merchantability and fitness for a particular purpose under California Uniform Commercial Code section 2316.[10]

In this instance, Edison cannot seek statutory protection from "unexpected and unbargained language of disclaimer" through a claim of "buyer's surprise" because appellant drafted the warranty provision here. (Cf. *Hauter* v. *Zogarts* (1975) 14 Cal.3d 104, 119-120 [120 Cal. Rptr. 681, 534 P.2d 377, 74 A.L.R.3d 1282].) Appellant had fair notice of the limitations within its own term. Due to the reasonable equality of bargaining power between the parties here, freedom of contract wins approval on the issue of warranty liability.

While Harnischfeger's argument has merit, a distinction must be drawn between absolute warranty liability and negligence and products liability. The language in this warranty provision does not afford a "plain, unambiguous, and clear" exculpation of Harnischfeger's alleged negligence or strict liability in tort. (Cf. *Delta Air Lines, Inc.* v. *Douglas Aircraft Co.* (1965) 238 Cal.App.2d 95, 100 [47 Cal.Rptr. 518].)

Summary judgment is affirmed as to Harnischfeger's alleged contractual liability on the warranty. However, this exculpation cannot be extended to respondent's purported strict liability for a "hidden" design defect or negligence. (See, e.g., *Vandermark* v. *Ford Motor Co.* (1964) 61 Cal.2d 256, 262-263 [37 Cal.Rptr. 896, 391 P.2d 168]; *Holmes Packaging Mach. Corp.* v. *Bingham* (1967) 252 Cal.App.2d 862, 875 [60 Cal.Rptr. 769].)

---

[10]California Uniform Commercial Code section 2316 provides in relevant part: "(1) Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this division on parol or extrinsic evidence (Section 2202) negation or limitation is inoperative to the extent that such construction is unreasonable. [¶] (2) Subject to subdivision (3), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that 'There are no warranties which extend beyond the description on the face hereof.' [¶] (3) Notwithstanding subdivision (2) [¶] (a) Unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like 'as is,' 'with all faults' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty ...."

The summary judgment is affirmed as to Edison's cause of action for breach of warranty against Harnischfeger, but reversed as to the causes of action in strict products liability and negligence against respondent.

Affirmed in part and reversed in part.

Ashby, J., and Hastings, J., concurred.

A petition for a rehearing was denied July 20, 1981, and respondent's petition for a hearing by the Supreme Court was denied September 2, 1981. Kaus, J., did not participate therein.